The State vs. Miller.

THE STATE vs. MILLER.

CRIMINAL LAW: EVIDENCE. *(1) Comparison of papers to prove handwriting. (2) Admissions. (3) Proof of defendant's guilt of different crime from that charged.*

1. The rule in this state is, that, for the purpose of determining whether a paper offered in evidence is in defendant's handwriting, the jury may compare it with other documents *already admitted in evidence upon other grounds*, and shown to be in his handwriting; but that such a paper cannot be put in evidence for the mere purpose of such a comparison.

2. On trial of an indictment, it appeared that public officers, while questioning defendant as to his participation in the crime charged, repeated orally to him the words of a letter supposed to have been written by him, containing threats of such crime; and that defendant, in their presence and at their request, wrote on another paper the same words. Said officers, while testifying at the trial to the admissions of defendant at such examination, produced such copy, and it was received in evidence and sub-

mitted to the jury for comparison with the original letter. *Held*, that it formed no part of defendant's *admissions*, and, not being admissible for any *other* purpose than that of such comparison, it should not have been received for that purpose, under the foregoing rule.

3. Arson not being in general a crime of like nature and intent with forgery or larceny, in the trial of an indictment for arson, proof that defendant had been guilty of forgery and larceny is not admissible, unless accompanied by evidence that the latter crimes and the one charged had a common purpose, or that one was committed to conceal the others.

REPORTED by the Judge of the Municipal Court of *Milwaukee* County.

*Miller* was convicted upon an information in said court for arson; and, after denying a motion to set aside a verdict and grant a new trial, the judge of said court reported the cause to this court upon questions of law, which are stated in the opinion.

*James Hickcox*, for the defendant.

For the state, there was a brief by the *Attorney General*, and oral argument by *H. W. Chynoweth*, Assistant Attorney, General.

ORTON, J. It appears to us that the principle and correct rule by which the admissibility of the evidence received and involved in the two questions reported is to be determined, and the true grounds of their application to a given case, have been clearly established by previous decisions of this court, and it will therefore be profitless to review the great multiplicity of decisions of other courts which recognize the same rule, and differ only in its application.

The questions propounded by the learned judge who tried the case are: *First.* Did the court err in permitting the letter written by the defendant in the police station, after he was arrested, to be admitted in evidence and given to the jury? *Second.* Did the court err in admitting testimony to show that the defendant had been guilty of forgery and larceny?

As to the first question, it was in proof that the defendant was being examined and questioned generally by the police officers concerning his participation in the crime charged, and a letter supposed to have been written by him, containing threats of arson, was orally and verbally repeated in his hearing, and he was requested to write and did write on another paper the same words, in the presence of such officers, and the original letter so repeated contained words of peculiar form, style and orthography, and the copy so made was in these respects a *fac simile* of the same; and such officers, as witnesses on the trial, produced such copy, while testifying to the admissions of the defendant in such examination, and it was received in evidence and submitted to the jury for the purpose of comparison with the original letter, and determining thereby the authenticity of the same.

The act of so copying the original letter could not, by the most liberal construction of language, be considered and treated as any part of the *oral* and *verbal* statement or admission of the defendant, elicited upon such examination. It was an independent act and fact, which had nothing to do with his oral statement or admission, which, to be evidence, must have been voluntary, and made understandingly, and repeated in the same language, if possible. But if language could be so liberally construed for the state, and so illiberally construed for the defendant, as to make such act of copying a part of the oral statement by being connected with it, even then it would not be the province or right of the prosecution to prove it on the ground that the *whole* of such statement must be given if any of it; but the defendant alone had the right to demand such testimony, if he chose to exercise it, on such ground. 1 Greenl. Ev., §§ 201, 202.

If such an act of copying a letter, at the dictation or request of a witness, can be treated and admitted in evidence as a *part* of his oral confessions, then such an act would be admissible if it constituted the *whole* of such confession; and a

fact might thus be proved as a confession or admission which could not be proved in any other way, and any other proof of which would be incompetent.

It will not be contended that it would be proper to prove that the defendant *actually* wrote the copy, for the purpose of introducing it in evidence to convince the jury by comparison that he also wrote the original, unless such copy is already in evidence for some other purpose.

It must be held, therefore, that such copy was not properly in evidence as a writing or paper with which the original letter could be compared by the jury upon the question of its authorship. The true rule in such cases is: "The jury may form their opinion as to the genuineness of a document by a comparison of it with any other documents *already in evidence before them*, and shown to be the genuine production of the person whose handwriting is in question." Roscoe's Crim. Ev., 5. This was the English rule until changed by statute of 28 Victoria, and is the rule adopted by this court, and will be, unless changed by our own legislature.

The rule as stated by this court is explicit, that such a comparison will not be allowed except with writings "clearly proved and already in the case, and before the jury for some other purpose." *Pierce v. Northey*, 14 Wis., 9; *Hazleton, Adm'r, v. The Union Bank of Columbus*, 32 Wis., 34.

The first question must therefore be answered in the affirmative.

As to the second question, there may have been other evidence than that which appears in the report, showing the intimate relation between the crimes of larceny and forgery, confessed or proved, and the crime of arson in the information, as to their *common* design, purpose and intent; for it is not certified that the report contains all of the evidence.

It is not perceived, however, from the evidence which is reported, how these crimes have any such relation to each other. The object of such testimony, when admissible, is not to prove

the act, but the purpose and intent with which the act is done; and therefore other crimes of like purpose and intent may be proved, as being in such intimate relation with each other and the crime charged as to show a common purpose and intent in the commission of all of them, and a continuity of purpose instigating the whole series of like offenses.

This is a class of evidence introduced for the mere purpose of explaining the motive and intention of the defendant in doing the act charged as a crime. Roscoe's Crim. Ev., 92. There is not in this evidence any proof whatever that the arson was committed to conceal the former crimes, or to destroy the evidence of them, or that the three crimes, all of them, were committed to carry out any common design or intent to injure or ruin the witness Bruhns. The paramount purpose and design of larceny and forgery are *gain* and personal advantage, while those of arson are injury from malice; and if these motives are absent from these acts respectively, the acts may not constitute crimes; and therefore these different motives and purposes may not be confused or blended in dissimilar offenses without affecting their degree of criminality. Russ. on Cr., 146, 788, 1034.

It would require strong evidence to prove that crimes so dissimilar in purpose and intent were committed with a *common* purpose and intent, and therefore bore such relation to each other that proof of one would be proof of the intent of the others, and bring the case within the rule that offenses of like nature and intent may be given in evidence to convict of a subsequent crime, or to prove the intent of such crime, or as tending to prove such intent.

In *Benedict v. The State*, 14 Wis., 425, the same rule is laid down as to the exhibition of weapons and previous threats as affecting the question of intent in a future homicide, and as showing the disposition of the defendant in the commission of the act; and such evidence is allowed because of the relation between threats of this character and the crime of mur-

der, in general purpose and intent; and it must, we think, be assumed that upon the trial of arson proof that the defendant *just previously* committed the crime of larceny is held by this court, in *Schaser v. The State*, 36 Wis., 430, to have been improper, as not relevant and pertinent, upon the ground that the two crimes had no relation with each other in purpose and design, so as to affect the question of intent in the latter.

We do not decide that it may not be shown, by testimony sufficiently strong, that even a previous larceny or forgery had the common purpose and design of a subsequent malicious burning, and bore such a relation to the arson, in this respect, that proof of the former might affect the question of intent in the commission of the latter crime; but such evidence is entirely wanting in this case, as reported, and may have been given on the trial. The answer to the second question must, therefore, be given *hypothetically* in the affirmative.