Dungan, Plaintiff in error, vs. The State, Defendant in error.

*February 22—March 10, 1908.*

*Criminal law: Evidence: Character of accused: Immorality of past conduct: Discretion of court: Relevancy: Impeachment of witness: Prejudicial error.*

1. Evidence of disgraceful, immoral, or criminal conduct of one accused of crime, which is in no way connected with the crime itself, is inadmissible upon the issue of guilt, and its admission, or any attempt by the prosecutor by suggestive questions to convey such facts to the jury, is a most serious abuse, which, if not promptly suppressed by the court with an explanation to the jury to remove so far as possible the ill effects, must usually work reversal.

2. While in a criminal prosecution the undoubted rule is that evidence of general bad character or specific misconduct of the accused is inadmissible on the issue of guilt or innocence of the particular crime charged, it is nevertheless qualified to the extent that, when the accused becomes a witness, he is subject to the same rules as other witnesses, and his veracity may be tested on cross-examination by questions relative to the morality of his past life, but such questions and the information they adduce are solely relevant to the matter of veracity.

3. The limits of this kind of cross-examination, namely, for the purpose of fairly ascertaining the character for veracity of witnesses, are left to the discretion of the trial judge, and unless abuse or neglect to exercise such discretion appear, the mere inquiry of defendant as a witness in a criminal prosecution as to some disreputable conduct in his career bearing but slightly on his character for veracity, need not result in reversal.

4. In a prosecution for assault with intent to rape, while a question to accused whether he has at any time conducted a disreputable place of business, ordinarily bears but slightly upon his character for veracity, nevertheless this court cannot say that in no case might not such questions, in the discretion of the trial judge, be asked.

5. In a prosecution for assault by defendant on his stepdaughter with intent to rape, the trial judge permitted the prosecuting attorney to ask accused on cross-examination questions tending to the insinuation that defendant's wife, the mother of the

prosecuting witness, was a dissolute woman and engaged in prostitution and at different times an inmate of houses devoted to that end, and stated in the presence of the jury that he permitted such inquiry "in so far as it touches upon the real consideration of the defendant of those things which are naturally expected and that we naturally expect to find existing between the father and daughter or the father and stepdaughter. That is all the bearing it has in this case." *Held*, that the admission of such evidence was prejudicial error, as, taken in connection with the court's statement, it need not be confined to considerations of mere veracity, but might bear upon the likelihood of the commission of the crime itself, and if the jury heeded it, the fact that defendant, or even his wife, was an immoral person living among disreputable surroundings, may have been by them considered sufficient to overcome the presumption of his innocence of the specific act charged.

ERROR to review a judgment of the municipal court of Milwaukee county: A. C. BRAZEE, Judge.    *Reversed.*

Plaintiff in error was convicted on a charge of assault with intent to rape, committed on a female, his stepdaughter, under the age of fourteen years, on December 8, 1904. Conviction on April 1, 1905, followed by sentence to the state prison, to review which defendant, *Milton M. Dungan,* sued out this writ of error.

The cause was submitted for the plaintiff in error on the brief of *W. J. Kershaw,* and for the defendant in error on that of the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general.

DODGE, J.    The errors assigned by the plaintiff in error are predicated upon the failure of the court over objection to prevent abuse by the prosecuting attorney of his right of cross-examination of the defendant. The propounded questions specially assigned as error fall into three classes: First, those tending to insinuate that the defendant himself at different times had conducted, or lived in, disreputable places devoted to prostitution either in Milwaukee or Chicago;

second, questions tending to the insinuation that defendant's wife, the mother of the prosecuting witness, was a dissolute woman and engaged in prostitution, and at different times an inmate of houses devoted to that end; third, that the place of residence of the defendant and his wife at the time of the offense charged was in a building inhabited by prostitutes.

The first class of these questions presents the often discussed and often much abused field of proving disgraceful, immoral, or criminal conduct of one accused of crime which is in no way connected with the crime itself. The rule is without exception that such evidence is wholly inadmissible upon the issue of guilt, because the jury have no right to draw any inference from such general bad character or specific misconduct that the accused committed the offense charged, and yet, while recognizing that they have no such right, it is well-nigh impossible to avert a prejudicial effect from such evidence. Its admission, or any attempt by the prosecutor by suggestive questions to convey such facts to the jury, is a most serious abuse, which, if not promptly suppressed by the court with explanation to the jury such as to remove so far as possible the ill effects, must usually work reversal. *Buel v. State,* 104 Wis. 132, 80 N. W. 78; *McAllister v. State,* 112 Wis. 496, 88 N. W. 212; *Paulson v. State,* 118 Wis. 89, 94 N. W. 771; *Baker v. State,* 120 Wis. 135, 97 N. W. 566; *Topolewski v. State,* 130 Wis. 244, 249, 109 N. W. 1037. Such being the undoubted rule upon the issue of guilt or innocence, it is nevertheless subject to a certain qualification which has arisen only since one accused of crime is permitted to testify in his own behalf. When he does so he is not only the defendant but he is also a witness, and in the latter capacity is subject to the same rules as other witnesses as to the asking of questions on cross-examination relative to facts which may impair his credibility. Thus by express provision of the statute he may be asked on cross-examination whether he has been convicted of a spe-

cific crime. Apart from statute the rule is general that some
inquiry may be made of every witness as to the morality of
his past life, on the assumption that immorality in some
other respects may have a bearing upon his character for
veracity. But such questions and the information they
educe are solely relevant to that question of veracity. It is
at once obvious that this rule opens a very wide field for
abuse by counsel of their privilege to make such inquiry. A
counsel may, if not restrained by the court, devote the cross-
examination of a witness not alone to proving disgraceful
and disreputable acts having but the remotest bearing upon
the question of his veracity, but he may also, by persistent
questions, suggesting facts which do not exist, commit a
great outrage upon the feelings and reputation of the witness,
to the great embarrassment of courts from resulting reluc-
tance of witnesses to place themselves in a position where
they can be so insulted. When any attorney evinces a tend-
ency toward such unworthy practices it becomes the duty of
the trial court to at once interpose and protect both the wit-
ness from such assaults and the forum over which he presides
from thus being debased into an arena of mere scandal. Es-
pecially is such restraint his duty when the witness is also
a defendant in a criminal prosecution, for he may not only
suffer in his feelings and reputation, but the jury are ex-
tremely likely to translate a suspicion of his general im-
moral character into a conviction of the particular crime
with which he is charged. The rule has therefore become
established that the limits of this kind of cross-examination,
namely, for the purpose of fairly ascertaining the character
for veracity of witnesses, may safely be left to the discretion
of the trial judges, and hence that, unless abuse or neglect
to exercise such judicial discretion appear, the mere inquiry
of a witness as to some disreputable conduct in his career
need not result in reversal. *Buel v. State, supra; State v.
Nergaard,* 124 Wis. 414, 423, 102 N. W. 899; 2 Wigmore,

Ev. § 981 *et seq.* To ask a witness whether he has at some time conducted a disreputable place of business ordinarily bears but slightly upon his character for veracity; and we held in *Meehan v. State,* 119 Wis. 621, 623, 97 N. W. 173, that it was by no means an abuse of discretion for a trial judge to reject such question, and yet we do not feel at liberty to say that in no case might it in the discretion of the court be asked. As to the inquiries in this case as to defendant's past life, we cannot conclude that any error was committed.

The other class of questions, namely, as to the conduct, behavior, and places of habitation of the defendant's wife, presents an abuse of the right of cross-examination which is hardly conceivable. What possible relevancy to the guilt or innocence or to the veracity of the accused could the immorality or misconduct of his wife have? Is it conceivable, when a witness goes upon the stand in aid of the ascertainment of the truth, that he so opens the door to assaults on his feelings and the reputation of others as that the opposing attorney may, by asking him the question whether his wife was ever an inmate of a house of ill-fame, spread abroad an insinuation of that fact? While an appellate court, in its anxiety to sustain a judgment when it can believe that errors committed upon the trial could not have affected the result, might pass over even such an assault as this upon a witness, we cannot think that in the present case such course is open to us, for the court in ruling upon certain of those questions in effect declared, in the presence of the jury, that he permitted inquiry into the conduct and surroundings of the defendant's wife and of defendant himself "in so far as it touches upon the real consideration of the defendant of those things which are naturally expected and that we naturally expect to find existing between the father and daughter or the father and stepdaughter. That is all the bearing it has in this case." This obviously meant that the fact of immoral surroundings and conduct suggested, as a legitimate

inference, probability of the specific offense between the defendant and the prosecuting witness; that such evidence need not be confined to considerations of mere credibility or veracity, but might bear upon the likelihood of the commission of the crime itself. This brought the cross-examination within all the words of disapproval which were pronounced in the *Paulson Case* with reference to an attempt to defame a defendant's character before he had become a witness. If the jury heeded this remark, the fact that the defendant, or even his wife, was an immoral person living among disreputable surroundings may have been by them considered sufficient to overcome that presumption of his innocence of the specific act of assault upon this child, and to have hurried them to a conclusion of guilt which they might not have been able to reach from the unaided testimony of the prosecutrix, fully contradicted by the defendant himself, and also persuasively contradicted by the testimony of other witnesses. This was error which we cannot convince ourselves can be passed over as not prejudicial.

*By the Court.*—Judgment and sentence reversed, and cause remanded for new trial. The warden of the state prison at Waupun will surrender the plaintiff in error, *Milton M. Dungan,* to the sheriff of Milwaukee county, to be by him held to abide the further order or judgment of the court.