STATE of Wisconsin, Plaintiff-Respondent,
v.

Larry W. FRIEDRICH, Defendant-Appellant-Petitioner.

Supreme Court

*No. 84–984–CR. Argued September 5, 1986.—Decided January 14, 1987.*

(Also reported in 398 N.W.2d 763.)

For the defendant-appellant-petitioner there was a brief by *James B. Halferty*, Lancaster, and oral argument by *Mr. Halferty*.

For the plaintiff-respondent there was a brief by *Kirbie Knutson*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general, and oral argument by *Marguerite M. Moeller*, assistant attorney general.

DAY, J. This is a review of an unpublished decision of the court of appeals affirming a judgment of conviction of the circuit court for Grant county, Honorable John R. Wagner, Circuit Judge. After a jury trial, Larry W. Friedrich (Defendant) was convicted of two counts of second-degree sexual assault in violation of sec. 940.225(2)(e), Stats.[1]

---

[1] Section 940.225, Stats., provides:

4

The parties on review have phrased the issues in terms of whether the trial court abused its discretion in refusing to admit or in admitting certain types of evidence, and have asked us to review the court of appeals' affirming of most of these trial court rulings. This court will not ordinarily review a court of appeals' decision in a criminal case where only the question of the proper exercise of a trial court's discretion was before the court of appeals. *State v. Outlaw*, 108 Wis. 2d 112, 120, 321 N.W.2d 145 (1982). *See also, State v. McConnohie*, 113 Wis. 2d 362, 334 N.W.2d 903 (1983). Exceptions to this general rule have been made, however, as in *Outlaw*, where this court accepted for a review a case based on allegations by the state that the court of appeals in that case had imposed upon it an inappropriate burden of proof. *Outlaw*, 108 Wis. 2d at 120. The *Outlaw* court stated: "The burden of proof to be assumed by the parties under sec. 905.10(3)(b), Stats., proceedings *is clearly a matter of statewide importance and would have an effect on numerous criminal, and some civil, cases in the future." Id.* (Emphasis added.)

This case was accepted, in part, because we found that it raised important issues regarding the admissibility of psychological evidence, particularly "psychological profile" evidence when offered by a defendant for the purpose of showing his or her own pertinent traits of character. In reaching these issues, we have followed the

---

"940.225. Sexual assault. . . . (2) SECOND DEGREE SEXUAL ASSAULT. Whoever does any of the following is guilty of a Class C felony: . . .

"(e) Has sexual contact or sexual intercourse with a person who is over the age of 12 years and under the age of 16 years."

5

approach used by the parties and thus, in reviewing the correctness of the court of appeals' conclusion that the trial court did not commit an abuse of discretion in refusing to admit the psychological profile testimony, we in effect review the same issue as reviewed by the court of appeals. Thus, the first issue is: 1) Did the trial court abuse its discretion in refusing to allow a psychologist to testify for the defense that the accused did not fit the "psychological profile" of known incestuous sex offenders?

On the question of the admissibility of prior sex crimes testimony, this court was asked to review the question of whether or not the court of appeals incorrectly held that there was no abuse of discretion in admitting prior sex crimes evidence. We viewed this as a request to look at prior cases by this court to determine whether or not the admissibility here of such testimony under the facts of this case amounted to an abuse of discretion. The case afforded the court an opportunity to lay down more definitive guidelines in future cases involving admissibility of prior sex crimes evidence. As with the "psychological profile" evidence, the prior sex crimes evidence involves a matter of substantial importance. For these reasons, a majority of this court decided to accept review in this case. Thus, the second and third issues are: 2) Did the trial court abuse its discretion in admitting testimony of other sex acts committed against the complainant and another young girl four and six years prior to the charged offense? 3) Did the trial court abuse its discretion in admitting testimony of an adult woman who testified that the Defendant sexually harassed her two years prior to the charged offense?

Having taken for review these issues, we also address a fourth issue raised by the Defendant: 4) Should a new trial be granted in the interest of justice?

We conclude that the trial court did not abuse its discretion in refusing to admit the "psychological profile" evidence since the trial court was never asked to address the question of whether the proffered evidence was admissible to show a pertinent character trait of the accused. We also conclude that the admission of the two prior sex acts with young girls did not constitute an abuse of discretion since the court could have reasonably determined that, when compared with the nature of the crimes for which Defendant was charged, the prior acts served to establish the existence of a general scheme or plan.

Defendant also claims prejudicial error in the admission of the testimony of an adult woman who was allegedly sexually harassed by the Defendant. We conclude this testimony was improperly admitted by the trial court, but its admission constituted harmless error since we also conclude that there is no reasonable possibility that the error contributed to the conviction.

On the basis of the foregoing, we conclude there has been no miscarriage of justice and we are persuaded that a new trial would not lead to a different result. We therefore deny the request for a new trial in the "interest of justice." We affirm the court of appeals and uphold the convictions.

The Defendant was charged and convicted on two counts of second-degree sexual assault under sec. 940.225(2)(e), Stats., for acts committed against his fourteen-year old niece by marriage. Her testimony established that the assaults occurred on two separate occasions while she was babysitting for Defendant's

7

children. Defendant denied the sexual assaults and produced an alibi defense. He testified that he was working at a tavern on both nights that the assaults allegedly occurred.

At trial, defense counsel made as an offer of proof the testimony of a clinical psychologist, Dr. Thomas Sannito. Such offer took a question and answer form. On the basis of tests administered to Defendant by Dr. Sannito, as well as observations garnered from personal interviews with the Defendant, Dr. Sannito prepared what he called a "psychological profile." He then compared Defendant's psychological profile to the psychological profile of known "incestuous" sex offenders.[2] Dr.

---

[2] Dr. Sannito employed a definition of "incest" which was broad enough to incorporate the relationship in the instant case, where the victim was the niece of the Defendant, but only through marriage. He stated:

> "I compared whether [Defendant] was similar or dissimilar to the sexual offenders and in particular incestuous fathers who are defined not just as people who have sexual relations with daughters but people who have sexual relations with any children in the family. . . . "

Dr. Sannito also stated that "family" meant "extended family."

Dr. Sannito's definition of incest was not challenged, nor was the effect that the use of this definition had on the tests he administered gone into. We note the legal definition in Wisconsin is set forth in sec. 944.06, Stats:

> "**944.06 Incest.** Whoever marries or has nonmarital sexual intercourse with a person he or she knows is a blood relative and such relative is in fact related in a degree within which the marriage of the parties is prohibited by the law of this state is guilty of a Class C felony."

*See also*, sec. 765.03(1), Stats.:

> "**765.03 Who shall not marry; divorced persons.** (1) No marriage shall be contracted while either of the parties has a hus-

Sannito stated that the Defendant's psychological profile was "diametrically opposed or different from the profile established for incestuous fathers and sexual offenders."

The trial court asked Dr. Sannito whether his conclusion that Defendant did not have a profile consistent with performance of the alleged sex offenses would be modified or changed if he were to assume that the Defendant had engaged in prohibited sex acts of a nature similar to the charged offenses with other individuals prior to trial. Dr. Sannito responded that, assuming the prior acts took place, he would then "entertain the idea that possibly, that what we have is a false negative. In other words, a person who absolutely doesn't fit the profile at all, but who in fact is a person who committed these things and we missed it."

After Dr. Sannito set forth the substance of his testimony, defense counsel proceeded to explain his reasons and justifications for offering the evidence. He stated that the witness was presented "as an expert with specialized knowledge, who has tested this Defendant and finds that he lacks certain psychological characteristics." He argued that this finding "tends to corrobo-

___

band or wife living, nor between persons who are nearer of kin than 2nd cousins except that marriage may be contracted between first cousins where the female has attained the age of 55 years or where either party, at the time of application for a marriage license, submits an affidavit signed by a physician stating that either party is permanently sterile. Relationship under this section shall be computed by the rule of the civil law, whether the parties to the marriage are of the half or of the whole blood. A marriage may not be contracted if either party has such want of understanding as renders him or her incapable of assenting to marriage."

The statutory definition of "incest" is thus much narrower than the definition employed by Dr. Sannito.

rate the Defendant's testimony that he did not do these acts," and "tends to negate the complaining witness' testimony that he did those acts."

The state argued that the proffered testimony went to the matter of witness credibility, a matter reserved to the jury, and was therefore inadmissible.

Noting that the only reason that the testimony would be introduced would be to support the Defendant's denial of guilt, the trial court concluded that to admit the evidence would result in a usurpation of the jury function of assessing witness credibility, and disallowed the testimony.

The court of appeals, using an abuse of discretion standard, concluded there was no error. The appeals court noted that expert opinion testimony concerning a general character trait of a Defendant may be admissible, but observed that admission of such testimony rests in the discretion of the trial court. The appeals court found that discretion had been exercised and that there had been a reasonable basis for the determination.

The parties have focused our attention on the matter of identifying the purpose for which the psychologist's testimony was offered. At trial, defense counsel appeared to offer the evidence in order to support Defendant's credibility and impugn the credibility of certain adverse witnesses. The District Attorney and the trial court both understood this to be the purpose of the evidence and defense counsel raised no objection to this characterization. Defense counsel made brief mention of secs. 907.02, and 907.04, Stats.,[3] dwelling on the former,

---

[3] Sections 907.02 and 907.04, Stats., provide:

"**907.02 Testimony by experts.** If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an

in order to emphasize that the psychologist could issue an expert opinion on these matters and that his opinions would assist the jury. On appeal, defense counsel argued that the testimony was offered for the limited purpose of establishing that the Defendant did not match the psychological profile of known incestuous offenders, and that the psychologist would not issue an opinion on Defendant's guilt or innocence.

At oral argument, defense counsel maintained that he had clearly stated the purpose for introducing the testimony and that the opinion evidence fit within sec. 904.04(1)(a), Stats., as a character trait of the accused.[4] The record does not support this assertion. He also stated that the testimony went to the credibility of both the Defendant and the accusing witnesses.

The parties have emphasized the applicability of sec. 904.04(1)(a), Stats., to this case. Section 904.04(1),

---

expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

"**907.04 Opinion on ultimate issue.** Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

Defense counsel noted both of the foregoing sections in his offer of proof. While these sections provide for the use of expert opinion evidence, they do not dispose of the ultimate question of admissibility.

[4] Section 904.04(1)(a), Stats., provides:

"**904.04 Character evidence not admissible to prove conduct; exceptions; other crimes.** (1) CHARACTER EVIDENCE GENERALLY. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

"(a) *Character of accused.* Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same; . . ."

states the general rule that character evidence is not admissible for the purpose of proving that the person acted in conformity therewith. Subsection (1)(a) outlines an exception to that rule, providing, in part, that an accused may introduce evidence of a pertinent character trait. The parties debate whether the proffered opinion testimony comes within the sec. 904.04(1)(a), exception as establishing a pertinent character trait of the accused, i.e., a character trait that would prevent him from committing incest.

In this case the trial court expressed concern over the effect that the introduction of the testimony would likely have on the jury. The trial court noted that the type of expert testimony sought to be introduced had the potential to cause the jury to substitute the expert's opinions for its own, and concluded the evidence was inadmissible due to its likelihood to usurp the jury's function in assessing witness credibility.[5]

The trial court did not have the opportunity to exercise its discretion on the question of whether the opinion evidence was admissible under sec. 904.04(1)(a), Stats. The mechanics of an offer of proof in our system of evidence places responsibility for stating the purpose of proffered evidence upon the party seeking to introduce the evidence. Here defense counsel had the burden

---

[5] The trial judge stated that the psychological profile testimony:

"[W]ill be coming in to show that Mr. Friedrich is not of the characteristic and profile that was used apparently in the studies in reaching a profile of rapists and incestuous individuals and child molesters. The only reason that would be coming in would be to back up Mr. Friedrich's statement that no, he didn't do it. Now, that would go directly to credibility and that's just exactly what our courts have said should not be happening. You shouldn't let the psychiatrists or the psychologists usurp the function of the jury on a question of credibility."

of articulating the correct rationale for admitting the evidence, and did not direct the court's attention to the proper statutory section.

The burden of setting forth the substance of the evidence in making an offer of proof is clearly stated in sec. 901.03(1)(b), Stats.[6] Error may not be predicated on an evidence ruling if the proponent fails to apprise the judge of the substance of the evidence.

Placing the responsibility on the proponent of evidence for identifying the purpose for which the evidence is sought to be introduced, and the grounds for its admissibility, is consistent with our system of advocacy and with prior statements of this court on related evidence questions. In *Haskins v. State*, 97 Wis. 2d 408, 294 N.W.2d 25 (1980), this court dealt with a claim of error related to a trial court ruling limiting the scope of cross-examination of a witness. At trial, the prosecutor objected to questions put to the witness on the grounds of irrelevancy, and the trial court sustained the objection. This court upheld the ruling, stating: "Where no offer of proof was made with regard to any testimony excluded by the ruling, and where no explanation was given as to why defense counsel thought the question was material, no abuse of discretion can be found." *Id.* at 422–423.

---

[6] Section 901.03, Stats., provides:

"**901.03 Rulings on Evidence.** (1) EFFECT OF ERRONEOUS RULING. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and . . .

"(b) *Offer of proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked."

In *Frankovis v. State*, 94 Wis. 2d 141, 151–152, 287 N.W.2d 791 (1980), the defendant claimed that the trial court erred when two photographs of the robbery victim were admitted into evidence, in that they would evoke a sympathetic reaction toward the victim and hostility toward the defendant, from the jury. Defendant made an objection at trial, but not on these grounds. The court stated: " '[A] specific objection overruled will be effective only to the extent of the ground specified.' " *Id.* at 152, quoting *State v. Hoffman*, 240 Wis. 2d 142, 152, 2 N.W.2d 707 (1942).

In *State v. Becker*, 51 Wis. 2d 659, 188 N.W.2d 449 (1971), this court faced an issue similar to the issue raised in *Haskins*, 97 Wis. 2d at 422–423. In *Becker*, the defense counsel argued the trial court erred when it ruled that twenty-seven questions asked of one witness were immaterial. *Becker*, 51 Wis. 2d at 666-67. The defense counsel declined at trial to make an offer of proof to show the materiality of the questions and also declined to explain the theory of the defense as an aid to ruling on the questions. *Id.* at 667.

The *Becker* court noted the general rule that where counsel fails to state the purpose of a question to which an objection is sustained on grounds of materiality, the trial court may exercise its discretion to exclude the evidence. *Id.* at 667. In explaining this rule, this court quoted favorably from McCormick:

"The reason for the requirement is that the judge must be fairly informed of the basis for the proponent's claim of admissibility and the appellate court may understand the scope and effect of his ruling. To this end the statement must be reasonably specific, must state the purpose of proof offered unless that is apparent, and where the offered facts suggest

14

a question as to their materiality or competency the offer must show the facts on which relevancy of admissibility depends." McCormick, *Evidence* (Hornbook series), pp. 113, 114, sec. 51. *Id.* at 668.

In the instant case, as a direct result of defense counsel's failure to properly identify the admissibility question as one related to character and not credibility, the trial court was unable to address that question. We have stated that: "Where a line of inquiry is sought to be justified on a theory no[t] . . . readily apparent . . . counsel owes it to the court to point out the proper reason for it, and on his failure to do so rejection of the evidence will not ordinarily be considered to warrant reversal." *Heims v. Hanke,* 5 Wis. 2d 465, 471, 93 N.W.2d 455 (1958).

Even though the trial court did not exercise its discretion on the question of whether the proffered testimony constituted admissible evidence under sec. 904.04(1)(a), Stats., the trial court did exercise its discretion in excluding the testimony. We conclude that this exercise of discretion was proper.

■

Whether or not expert opinion should be admitted into evidence is largely a matter of the trial court's discretion. *Valiga v. National Food Co.,* 58 Wis.2d 232, 251–252, 206 N.W.2d 377 (1973). Whether opinion testimony of expert witnesses is properly received depends upon whether the members of the jury, having the knowledge and general experience common to every member of the community, would be aided in consideration of the issues by the testimony offered. *Id.* at 251. The expert testimony must assist the trier of fact. Section 907.02, Stats.

■ The trial judge found that the proffered testimony went to the matter of assessing witness credibility. The credibility of witnesses and the weight given to their testimony are matters left to the jury's judgment. *Shawver v. Roberts Corp.*, 90 Wis. 2d 672, 681, 280 N.W.2d 226 (1979). The credibility of a witness is ordinarily something a lay juror can knowledgeably determine without the help of expert opinion. *State v. Haseltine*, 120 Wis. 2d 92, 96, 352 N.W.2d 673 (Ct. App. 1984).

■ The trial judge could have reasonably determined that the jury could draw its own conclusions on the question of credibility, and concluded that the admission of such testimony was not only unnecessary, but improper. *Valiga*, 58 Wis. 2d at 251. In reviewing this decision, the question on appeal is not whether this court, ruling initially on admissibility of the evidence, would have permitted it to come in, but whether the trial court exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record. *State v. Wollman*, 86 Wis. 2d 459, 464, 273 N.W.2d 225 (1979).

The trial judge's ruling excluding the opinion evidence appears reasonable, especially given this court's recent statement on psychiatric testimony:

> "Although the majority of courts allow psychiatric testimony for impeachment purposes, the use of such testimony is generally limited to those cases where the witness whose credibility is in issue suffers from some physical or psychological disorder or defect which could interfere with his perceptual faculties or his ability to tell the truth. . . . *Where the basis for the challenge of the witness' credibility is*

16

*not a physical or psychological disorder, however, the need for expert testimony is not recognized."* Hampton v. State, 92 Wis. 2d 450, 460, 285 N.W.2d 868 (1979). (Emphasis added.)

The trial judge had a reasonable basis for excluding the expert testimony and no abuse of discretion occurred.

Whether or not the proffered testimony would be admissible under sec. 904.04(1)(a), Stats., under the rationale expressed in *King v. State*, 75 Wis. 2d 26, 34–39, 248 N.W.2d 458 (1977), we need not decide because the attorney did not raise this issue. *Cf.*, *State v. Cavallo*, 88 N.J. 508, 443 A. 2d 1020 (1982).

The State, over objection, introduced the testimonial evidence of M.A., J.H., and K.K. The trial court directed that this testimonial evidence was admissible on rebuttal, provided that the Defendant testified.[7] The Defendant did testify and the testimony was admitted.

M.A. testified that she had been assaulted by the defendant. This alleged assault took place five years before trial and four years before the charged offenses occurred. M.A. testified that the Defendant picked her up from school in his car, and then pulled her pants down and touched her genital area. M.A. was ten years old at the time of this prior incident.

J.H.'s testimony recounted an occasion, seven years prior to trial, when she fell asleep while babysitting for Defendant's children, and upon awakening encountered Defendant sitting beside her. She testified Defendant placed his hand inside her pants and told her to open or

---

[7] The trial court's ruling that the other-acts testimony would not be admissible in the State's case-in-chief was erroneous. Once the evidence was admissible under sec. 904.04(2), Stats., the evidence could have been introduced in the State's case-in-chief. We find that the Defendant was not prejudiced by this error.

move her legs. J.H. was thirteen at the time of this incident.

K.K. testified that the Defendant had made sexual advances to her while she was employed as a bartender in the Defendant's tavern in the spring of 1982. K.K. was twenty years old at the time of the trial, and 18 years old at the time of the alleged incidents.

The trial court admitted the testimony of M.A., J.H., and K.K. concerning these prior incidents, finding the evidence could show that Defendant had a "general scheme or motive" to obtain sexual gratification from young girls, and thus would be admissible under sec. 904.04(2), Stats.[8]

The court of appeals held that the prior-incident testimony of M.A. and J.H. was admissible to show a plan or motive under sec. 904.04(2), Stats., due to the similarities between the charged sexual misconduct and the other acts to which the complainant, M.A., and J.H. testified. The court described Defendant as having had a plan or motive to obtain sexual gratification from young girls with whom he had a quasi-familial relationship. It was found that the trial court's ruling on these two witnesses had a reasonable basis, and that there had been no abuse of discretion in its admission.

However, the appeals court held that the trial court erred in admitting the testimony of K.K. since it was

---

[8] Section 904.04, Stats., provides:

"**904.04 Character evidence not admissible to prove conduct; exceptions; other crimes . . . .**" (2) OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

not probative of any plan or motive in common with that applicable to M.A. and J.H., or admissible under any other category under sec. 904.04(2), Stats. The court held this to constitute harmless error, however, since there was no reasonable possibility that the error contributed to Defendant's conviction.

Defendant's chief argument is that the other crimes evidence is inadmissible because it is remote in time, place, and circumstance. The State asserts that the evidence is admissible to show scheme or plan since the time gaps between the alleged incidents and the charged offenses do not reduce the probative value of the evidence.

■

Trial courts must apply a two-step test in determining whether other crimes evidence is admissible. *State v. Danforth*, 129 Wis. 2d 187, 202, 385 N.W.2d 125 (1986). First, the trial court must find that the evidence fits within one of the exceptions in sec. 904.04(2), Stats. Second, the trial court must exercise its discretion to determine whether any prejudice resulting from such evidence outweighs its probative value. Section 904.03. Implicit in the foregoing analysis is the requirement that the other crimes evidence is relevant to an issue in the case. *Danforth*, 129 Wis. 2d at 202.

An additional principle affects the exercise of trial court discretion as to rulings on evidence in sex crime cases involving children. This court has stated that a "greater latitude of proof as to other like occurrences" is evident in Wisconsin cases dealing with sex crimes, especially those dealing with incest and indecent liberties with a child. *Hendrickson v. State*, 61 Wis. 2d 275, 279, 212 N.W.2d 481 (1973). This "greater latitude of proof" standard as applicable to other-acts evidence in

sex crimes cases was recently reaffirmed by this court in *State v. Fishnick*, 127 Wis. 2d 247, 378 N.W.2d 272 (1985). The *Fishnick* court stated: "We reaffirm, however, our commitment to the principle that a greater latitude of proof is to be allowed in the admission of other-acts evidence in sex crimes cases, particularly in those involving incest and indecent liberties with a minor child." *Id.* at 257. (Footnote omitted.)

The trial court found that the other-acts testimony of M.A. and J.H. fell within the "general scheme or motive" exceptions to sec. 904.04(2), Stats. We interpret the trial court's use of the term "scheme" to mean "plan." This finding denominates two exceptions under sec. 904.04(2), "plan" and "motive."[9] Having ascertained the specific exceptions under sec. 904.04(2), upon which the trial court relied, the next consideration on review is relevancy.[10]

---

[9] The State argues in its Brief that the trial court identified relevancy as to scheme or motive as *one* basis for admissibility; and that the trial court was using "scheme" and "motive" as synonyms. Although it is evident that many of the exceptions under sec. 904.04(2), Stats., tend to blend together, the "plan" and "motive" exceptions were specifically cited by the trial judge and deserve separate analysis.

[10] Section 904.01, Stats., provides:

"**904.01 Definition of "relevant evidence".** 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Implicit in the two-step analysis is that the other-acts evidence is relevant to an issue in the case. Before the court can engage in weighing probative value and prejudicial effect under sec. 904.03, Stats., a relevancy determination must be made. Section 904.03, provides:

The trial judge admitted the other-acts evidence, in part, because it was relevant to the issue of motive. In *Fishnick*, 127 Wis. 2d at 260–61, this court explained the relationship which motive, a specific type of exception to the general prohibition against character evidence listed in sec. 904.04(2), Stats., has to the elements of sexual assault under sec. 940.225, Stats. A defendant's motive may show the reason why a defendant desired the result of the crime charged. *Id.* at 260.

Section 940.225(5) defines "sexual contact" as used in the statute.[11] This definitional section, when taken together with the facts of this case, makes it clear that the elements of the crime that the state sought to convict the defendant of consisted of an *intentional touching* of the complainant's genital parts for the purpose of sexually *arousing* or *gratifying* the defendant.

---

"904.03 **Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** *Although relevant*, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." (Emphasis added.)

[11] Section 940.225, Stats., provides:

"**940.225 Sexual Assault.** . . . (5) DEFINITIONS. In this section: "(a) 'Sexual contact' means any intentional touching by the complainant or defendant, either directly or through clothing by the use of any body part or object, of the complainant's, or defendant's intimate part if that intentional touching is either for the purpose of sexually degrading; or for the purpose of sexually humiliating the complainant or sexually arousing or gratifying the defendant or if the touching contains the elements of actual or attempted battery under s. 940.19(1)."

As in *Fishnick*, the motivation for defendant's touching the complainant was sexual gratification. There was obviously a similar motive present in the prior incidents with M.A. and J.H. One of the elements of the charged crime was that the Defendant had the purpose of sexual arousal or gratification. Other acts evidence is admissible when probative of the elements of a crime, subject to the general rule excluding character evidence. *Hough v. State*, 70 Wis. 2d 807, 813, 235 N.W.2d 534 (1975).

Because the purpose of the sexual contact is an element of the crime, and because the Defendant's motive is related to his purpose for committing the crime with which he is charged, other-acts evidence which tends to show Defendant's motive is properly admissible. *Fishnick*, 127 Wis. 2d at 260–61. Thus the other-acts evidence consisting of the testimony of M.A. and J.H. is relevant since it illuminates Defendant's motive, which in turn is related to his purpose for committing the crime—sexual gratification—which is an element of the charged offense.

The trial judge also found that the other-acts evidence was admissible to show a "plan," within the meaning of sec. 904.04(2), Stats. As noted, the trial judge used the words "general scheme" when referring to the alternate ground for admissibility.

In *Day v. State*, 92 Wis. 2d 392, 284 N.W.2d 666 (1979), the defendant was charged with two counts of sexual intercourse with a child. Other-acts testimony from three non-complaining witnesses, all minors, was admitted. The evidence ruling was upheld. The court stated:

"Clearly this evidence tended to establish that the acts of sexual intercourse were all part of a definite, preconceived plan, design or scheme by the defendant. The testimony also establishes that the defendant created the opportunity and circumstances whereby the plan could be carried out. Because the testimony in question tends to establish existence of a preconceived plan and the opportunity to carry it out, the testimony was highly relevant and therefore admissible." *Day*, 92 Wis. 2d at 405.

As illustrated in *Day*, reliance on the "plan" exception to sec. 904.04(2), Stats., requires that an inference be drawn. McCormick states that other-acts evidence sought to be introduced to establish the existence of a plan "will be relevant as showing motive, and hence the doing of the criminal act, the identity of the actor, or his intention." McCormick, *Evidence*, (Hornbook series, 3d ed.) p. 559, sec. 190. While identity is not at issue in this case, the doing of the act and intent are at issue. Defendant has denied doing the act. Moreover, intent is an element of the crime. The other-acts testimony of M.A. and J.H. is thus relevant since the "plan" established by the facts of record relates to these contested issues of fact. The testimony in question, as in *Day*, tends to establish the existence of a plan, and is therefore highly relevant.

The trial court specifically found that the probative value of this evidence would outweigh its prejudicial effect. Our review of the trial court's balancing of probative value and prejudicial effect under sec. 904.03, Stats., requires that we assess the other-acts referred to in the proffered testimony for their nearness in time, place, and circumstance to the alleged crime or element sought to be proved. *Fishnick*, 127 Wis. 2d at 261, citing *Whitty*

*v. State*, 34 Wis. 2d 278, 294, 149 N.W.2d 557 (1967) cert. denied, 390 U.S. 959 (1968).

We find that the evidence of the two prior acts, as testified to by M.A. and J.H., was properly admissible since it was highly probative of a scheme or plan and this probative value outweighed any prejudicial effect. The other-acts testified to by M.A. and J.H. were quite similar to the charged offenses. These two prior incidents, as well as the charged crimes, share certain characteristics: All of these incidents involve young girls of like age; the girls were either part of the Defendant's family or had a quasi-familial relationship with Defendant's family; the nature of the sexual contact was virtually identical; Defendant was seen taking advantage of the girls in the context of relationship which involved an implied trust; and the Defendant was seen gratifying his sexual desires through the physical contact. The presence of these common elements serves to establish the existence of a scheme or plan within the meaning of sec. 904.04(2), Stats.

The *Whitty* case explains that this type of other-acts evidence "is admissible when such evidence is particularly probative in showing elements of the specific crime charged, intent, identity, *system of criminal activity*, to impeach credibility, and to show character in cases where character is put in issue by the defendant." *Whitty*, 34 Wis. 2d at 292 (emphasis added). The facts of the instant case reveal that, at least with respect to the other-acts testimony of M.A. and J.H., the Defendant was involved in a system of criminal activity in seeking sexual gratification from young girls with whom he had a familial or quasi-familial relationship. The other-acts testimony was highly probative in this regard

24

and was properly admitted for the purpose of establishing this "plan."

Despite the time gaps in the present case, we conclude that the similarities among the prior incidents with M.A. and J.H. and the charged offenses are sufficient to sustain admissibility. We conclude it is unnecessary to establish any definite "cut-off" point at which prior and present events are so removed in time from one another that the prejudicial effect always outweighs any probative value. The issue of remoteness as it relates to the balancing process in sec. 904.03, Stats., must be dealt with on a case-by-case basis.

Remoteness in time is a consideration when weighing probative value versus prejudicial effect. The farther removed the prior incident and charged offense are in time, the less probative is the prior incident. We find that the marked similarities among the prior incidents (with M.A. and J.H.) and the charged offenses overcome considerations arising due to remoteness in time. The trial court did not abuse its discretion in its sec. 904.03, Stats., balancing and had a reasonable basis for determining that the probative value of the M.A. and J.H. testimony outweighed any prejudicial effect.

Our conclusion that the M.A. and J.H. testimony is admissible is given further support by the "greater latitude of proof" principle applicable in situations involving other-acts evidence in sex crimes. We note that this principle is particularly appropriate in both incest cases and cases involving indecent liberties with children.

Since we have found that the other-acts testimony of M.A. and J.H. was admissible to show a "plan" under sec. 904.04(2), Stats., we need not reach the second-step of the analysis to determine if the other-acts testimony of M.A. and J.H., as admitted under the "motive"

exception, was more probative than prejudicial under sec. 904.03. Nevertheless, it is evident that many of the considerations here would have paralleled the analysis under "plan" and we conclude that the other-acts testimony would have also been admissible to show "motive."

We find that the other-acts testimony of K.K., the adult woman, was inadmissible since it would have been more prejudicial than probative. As we stated in *Fishnick*, the type of legal prejudice with which we are concerned is the potential harm in a jury's concluding that because an actor committed one bad act, he necessarily committed the crime with which he is now charged. *Fishnick*, 127 Wis. 2d at 261-62. K.K. testified that two years prior to the trial she was employed for a few months in Defendant's tavern. K.K. was an adult at the time of her employment. K.K. stated that Defendant, on several occasions, made sexually provocative remarks to her, and tried to make sexual advances. The nature of this evidence is such that it does not fit within the outline of the scheme or plan established with respect to Defendant's seeking sexual gratification from young girls. This other-acts testimony thus does not fit within the scheme or plan exception.

Nor does the testimony offered by K.K. fit within the "motive" exception to sec. 904.04(2), Stats. The motive sought to be established by introduction of the other-acts testimony centered around Defendant's desire to obtain sexual gratification from young girls. The K.K. testimony showed that the Defendant sought a consensual sexual relationship with an adult.

The trial court abused its discretion in admitting K.K.'s testimony. However, we find this error to have

been harmless. We conclude that there is no reasonable possibility that the error contributed to the conviction. *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985). We are convinced that the jury would have reached the same verdict relying solely on the untainted evidence which was presented at trial.

The dissent's objection to the majority decision to uphold the Trial court's admission of other crimes evidence in this case and its criticism of the "greater latitude" doctrine of the court are unpersuasive.

The "greater latitude" rule for admission of evidence of past offenses in sex crimes cases which has been part of the law of this State since *Proper v. State*, 85 Wis. 615, 55 N.W. 1035 (1893), brings down the judicial wrath of the author of the dissent. He states: "[n]o reasons are given because there are no reasons that withstand scrutiny. In every case, the 'greater latitude' concept is merely stated as a conclusion fitting the *predilection* of the court." (Emphasis added.) (At page 7.)

"Predilection" is described by *Webster's Ninth New Collegiate Dictionary*, (1983) as: " ... a strong liking deriving from one's temperament or experience ... prejudice ... a feeling rooted in suspicion, fear, or intolerance ... bias ...."

The zeal with which the dissent attacks the present majority and past position of this court would make the word "predilection" more applicable to the position espoused by the dissent than that of the majority.

To a person of normal, social and moral sensibility, the idea of the sexual exploitation of the young is so repulsive that it's almost impossible to believe that none but the most depraved and degenerate would commit such an act. The average juror could well find it incom-

prehensible that one who stands before the court on trial could commit such an act.

Juries must have all the relevant facts before them. A past history of such a defendant's plans, schemes and motives is relevant. Many judges in this State and a majority of this court have been aware for years of the need to place all relevant evidence in this type of case before the factfinder. That is a compelling reason for the "greater latitude" doctrine that the dissent ridicules when it declares such doctrine dissolves into a mere "predilection" on the part of judges to treat sexual exploitation crimes in the special manner the law recognizes as proper. It's true as the dissent states that past acts of sexual abuse do show a "propensity"[12] on the part of the Defendant, because without such "propensity" or "leaning,"[13] the plan, scheme or motivation for it would never take place. But the plan, scheme and the motive behind the act to molest children is there as a fact and is in the exercise of judicial discretion clearly admissible, under sec. 904.04(2), Stats. The fact that the evidence also most certainly shows a propensity to commit such crimes should not deny its admission into evidence. There undoubtedly are some with a "propensity" to want sexual satisfaction from children who suppress

---

[12] *"Propensity*: An often intense natural inclination or preference *syn* see leaning."

[13] *"Leaning*: A definite but not decisive attraction or tendency *syn* LEANING, PROPENSITY, PROCLIVITY, PENCHANT mean a strong instinct or liking for something. LEANING suggests a liking or attraction not strong enough to be decisive or uncontrollable; PROPENSITY implies a deeply ingrained and usu. irresistible longing; PROCLIVITY *suggests a strong natural proneness usu. to something objectionable or evil;* PENCHANT implies a strongly marked taste in the person or an irresistible attraction in the object." (Emphasis added.)

28

their desires and commit no overt acts to bring such an unhealthy desire to fruition. Hence, they engage in no schemes or plans to actualize their morbid fantasy.

The purpose of the statute is to draw a distinction between a plan or scheme and a mere "propensity or leaning" toward some forbidden act. It is true that "the thought is father of the deed" but the thought does not always result in an act. Conscience, shame, fear of discovery keeps many anti-social thoughts or desires from being acted out. The law does not make thinking about adultery a crime, only the act itself is punished by our law. In this respect it differs from the more strict rule expressed in the christian religion where the thought as well as the deed is forbidden.[14]

It is probably true that more people may be sexually attracted to children than actually carry out this "propensity" or "leaning." But our statute makes admissible evidence of those *past acts* of sexual exploitation of children which demonstrate a scheme or plan. That scheme is to take advantage of the trust children show toward adults. Child exploiters take advantage of a child's physical and emotional vulnerability in order to give gratification to their warped and perverted "propensities" and "leanings." It is this scheme or plan to achieve sexual stimulation or gratification from the young, the most sexually vulnerable in our society, that allows trial courts in the exercise of discretion to admit evidence of past similar acts to show scheme or plan to exploit children.

---

[14] "You have heard that it was said 'you shall not commit adultery.' But I say to you that every one who looks at a woman lustfully has already committed adultery with her in his heart." Mt 5:28 R.S.V.

The actions of child molesters and abusers may have a sameness because they are the plans and schemes that have proven most workable in achieving the result the molester or abuser seeks to obtain. A similar pattern of conduct is often the basis of apprehension of offenders.

Crimes like robbery, burglary and theft may be committed in an infinite variety of ways. Thus, courts scrutinize more closely the admissibility of past acts evidence when such crimes are charged. Juries need all pertinent admissible facts in order to arrive at a just verdict. In cases where an alleged child sexual abuser may have exploited other children, it would surely be contrary to the intent of our statute to say that only prior acts involving this one particular child victim for whose molestation he is being charged may be shown. Yet, this is the position which the dissent would have this court adopt. As phrased by the dissent:

> "This writer would limit the *Proper* rule to a sex crime both involving the same victim and assailant and so close in time as to be a portion of a continuum of misconduct. Additionally, the ambience of the case should be such that it shows a relationship to the crime charged, i.e., *Proper*, even in its original form, does not conform to reasonable rules of evidence." (Dissent opinion at pages 43, 44, n. 3.)

We have correctly declared that where a defendant's prior actions show a scheme or plan to exploit children such facts should be permitted to be shown if in the discretion of the trial judge the probative value of the evidence exceeds its prejudicial impact.

Because of immaturity, fear and embarrassment, sexually abused children find it difficult to testify. It is for this reason that much is being written of late about

the necessity of support activities to make the taking of a statement less traumatic. Among these proposals are video taping their examinations and cross-examinations and allowing appropriate support persons to be present to make the ordeal of reliving and reciting their exploitation less difficult.

These are among the reasons why a more liberal admission of other crimes evidence is the rule in Wisconsin on sex crime cases.[15] While it can be argued that

---

[15] We do not consider the Pennsylvania case cited by the Dissent (slip opinion at page 21), to be very persuasive. Close examination of *Commonwealth v. Shively*, 424 A. 2d 1257 (Pa. 1981) reveals that in overruling *Commonwealth v. Kline*, 361 Pa. 434, 65 A. 2d 348 (1949), wherein the Court set forth the more liberal evidence standard in sex crimes, the *Shively* court adopted the analysis set out in *Commonwealth v. Boulden*, 179 Pa. Super. 328, 116 A. 2d 867 (1955).

The *Shively* court did not consider it necessary to engage in any independent analysis. Rather, the court adopted wholesale the rationale espoused in a case written some twenty-six years earlier. Society today is more aware of the extent of child sex abuse and its effect on the young than was the case in 1955.

We also note that, of the six judges hearing the *Shively* case, only two were on the "majority" opinion. Two concurred in the result; one without explanation and one explaining the two incidents in question were not similar enough to permit admission of the prior crime. A dissenting opinion was written and joined in by another judge. The dissent summarized the details of the prior crime and the crime with which defendant was charged:

"I dissent. Six day [sic] after appellee's release from prison where he was serving a three year term for forcible sodomy, he is again accused of forcibly raping and sodomizing another young girl. Both victims were approximately 20 years of age; both victims were in or entering their automobiles at the time they were approached by the perpetrator; both victims were forced with deadly weapons to accompany the assailant to a secluded country area; and both victims were ordered to assume crouching positions (one kneeling on all fours and one leaning over the front seat of an automobile) which

31

they demonstrate a "propensity" they may also demonstrate a scheme, plan, motive, identity or other exception to the other crimes exclusionary rule.

Sexual abuse of children has become a serious problem:

> "The sexual abuse of children is real and far more prevalent than most Americans are willing to believe. Approximately a half million American children will be sexually abused this year. Less than six percent of the incidents of child sexual abuse are ever reported to the police. Of the incidents reported, few ever go to trial. The majority of the. cases that are prosecuted are disposed of through plea bargaining, which usually means probation and some form of treatment for the offender. The plea bargain rarely gives adequate consideration to the plight of the child victim-witness. Further, contrary to popular belief, over fifty percent of these incidents of child sexual abuse involve violence, and yet less than one percent of known offenders ever go to prison." Comment, *Use of Videotaping to Avoid Traumatization of Child Sexual Abuse Victim-Witnesses*, 21 Land & Water L. Rev. 565. (University of Wyoming, College of Law) (1986). (Footnotes omitted).[16]

---

exposed their genitalia from the rear for the assailant. In my opinion, the circumstances surrounding these crimes are sufficiently similar, and the time frame, considered in light of appellee's incarceration, sufficiently small, that appellee's conviction of the first offense was admissible at his trial for the second.

"Consequently, I would reverse the order of the Superior Court and affirm the judgments of sentence." *Shively*, 424 A. 2d at 1260.

[16] The gravity and extent of the problem of child sexual abuse has been well documented. Numerous Law Review articles on related studies have commented on the striking statistics. *See, e.g.*, Note, *The Testimony of Child Victims in Sex Abuse Prosecutions: The Legislative Innovations*, 98 Harv. L. Rev. 806 (1985). (Citing survey

The same author concludes: "The primary problem facing prosecutors in child sexual abuse cases is the difficulty in obtaining admissible evidence."[17] *Id.* at 566.

results that one in five females and one in eleven males are sexually victimized as children; citing figures showing that reports of child sex abuse have increased 650% since 1976); Note, *The Constitutionality of the Use of Two-Way Closed Circuit Television to Take Testimony of Child Victims of Sex Crimes*, 53 Fordham L. Rev. 995 (1985).

A discussion of the national estimates and State of Wisconsin estimates of child sexual abuse appears in *Sexual Abuse of Children: A Background Report*, S.B. 80-19 Wisconsin Legislative Council Staff, pp. 4-11 (1980). This report notes the "wide variance" in estimates as to the extent of the problem on the national level. Analysts often employ different methodologies and definitions in their studies. There appears to be general agreement, however, both that the problem is serious, and that incidents of child sexual abuse are grossly under-reported.

Although state law now mandates the reporting of child sexual assault *(i.e.,* violation of sec. 940.225, Stats.), the incidence of child sexual assault in Wisconsin is also under-reported.

In Whitcomb, Shapiro & Stellwagen, *When the Victim is a Child: Issues For Judges and Prosecutors* U.S. Dept. of Justice (1985), the authors, citing six studies on child sexual abuse based on retrospective self-reports of childhood experiences, concluded:

> "Although these studies are not strictly comparable due to variations in definitions and research methodology, their findings suggest that anywhere from 12 to 38 percent of all women, and from three to 15 percent of men, are subject to some form of sexual abuse in their childhood." *Id.* at 2-4.

[17] There has been a great deal of recent discussion concerning efforts by state legislatures and courts to overcome some of the evidentiary obstacles. Two key areas have dealt with hearsay exceptions and the use of videotaped testimony. *See,* Note, *Minnesota's Hearsay Exception For Child Victims of Sexual Abuse*, 11 Wm. Mitchell L. Rev. 799 (1985); Comment, *Children's Testimony in Sexual Abuse Cases: Ohio's Proposed Legislation*, 19 Akron L. Rev. 441 (1986); McGrath & Clemens, *The Child Victim as a Witness in*

The permanent scars that the victims of child sexual abuse sustain are well documented and frequently described in the scientific literature and in the press. A very moving article on therapy support groups for adults who were the victims of incest in childhood and who find the memory and psychological burden difficult to bear appears in the Fall of 1986 issue of *Victim's Voice*, Vol. 2, No. 3, p. 7, published quarterly by the *Wisconsin Crime Victims Council and the Office of Crime Victim Services*, Wisconsin Department of Justice, P.O. Box 7951, Madison, Wis. 53707.

Choosing to ignore this compelling statement of reason for the rule, the dissent tells us: "[i]n none . . . does the court ever articulate or explain any rationale for setting sex crimes, either generally or involving minors or blood relatives in particular, *apart from all other crimes*. . . . No reasons are given because there are no reasons...." (At page 7). (Emphasis added.)

The point of view espoused by the dissent equating the trial of a child sexual assault with that of forgery reflects a view of the law that is wrong and does not comport with sec. 904.04, Stats. Such a view does not reflect the reality of what is being faced by society in trying to cope with this problem. We must not and will

*Sexual Abuse Cases*, 46 Mont. L. Rev. 229 (1985); Note, *A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases*, 83 Colum. L. Rev. 1745 (1983); Comment, *Televised Testimony vs. The Confrontation Clause. . . . The Use of Videotapes in the Prosecution of Child Sexual Abuse*, 23 Hous. L. Rev. 1215 (1986); Comment, *Defendants' Rights in Child Witness Competency Hearings: Establishing Constitutional Procedures for Sexual Abuse Cases*, 69 Minn. L. Rev. 1377 (1985); *See also*, Comment, *The Admissibility of "Child Sexual Abuse Accommodation Syndrome" in California Criminal Courts*, 17 Pac. L. Journal 1361 (1986).

not treat the sexual abuse of children as the dissent suggests when the dissent declares such offenses to be "a commonplace variety of criminal act. . . . " (Dissent, at pages 51, 52). It is more than that. The consequences are too devastating and too lasting for such an approach to prevail.

But the dissent finds solace in what is apparently meant to be a broad overview of history: "[t]he evidence of the defendant's alleged prior misconduct would fit almost every sexual assault upon minors that has been before this court . . . *there is nothing new under the judicial sun.*" (Emphasis added.) (At page 51).

But the "judicial sun" is more useful when used to cast its light in the dark corners of this so easily hidden crime. The interpretations by this court have been in conformity to both the letter and spirit of the statute in question and promotes the ends of justice: punishment, deterrence, prevention and perhaps, hopefully, rehabilitation.

## REQUEST FOR NEW TRIAL

Defendant has asked for a new trial in the interest of justice. "This court is reluctant to grant a new trial in the interest of justice and exercises its discretionary power only in exceptional cases." *State v. Cuyler,* 110 Wis. 2d 133, 141, 327 N.W.2d 662 (1983). We do not find this to be an exceptional case.

There has been no showing of a miscarriage of justice, nor does it appear that a retrial under optimum circumstances will produce a different result. *Id.* at 142. We therefore deny Defendant's request for a new trial.

![black bar]

*By the Court.*—The decision of the court of appeals is affirmed.

HEFFERNAN, CHIEF JUSTICE *(dissenting).* Because the prior-acts evidence admitted at trial prejudiced the defendant's right to a fair trial, I dissent. Before pointing out that the majority supports its conclusion only by its refusal to honor elementary principles of proof applicable in a criminal case, it is important to take a common sense look at the real proposition asserted by the majority.

That proposition is that a criminal charge not supported by evidence sufficient to convict can nevertheless be made to "stick" if there is, lurking in the background, another incident which is equally deficient in probativeness or reliability.

The argument is that two zeros add up to something positive. They do not—not in mathematics, not in the criminal law, and not in any system that honors justice and is founded upon the theory that no person shall be convicted unless found guilty beyond a reasonable doubt *of the crime charged.*

The majority relies upon two remote, uncorroborated, uncharged, and unproved incidents, one of which allegedly occurred five years before trial and the other seven. These unproved incidents allegedly involved a sexual touching years prior to the trial here. Those claims of assault were never reported to the police, were not corroborated, and were never tested as to their truth in a court of law. Yet, the majority relies upon those incidents for proof beyond a reasonable doubt of guilt of the charged crime. As is clearly evident from the majority opinion, the evidence gleaned in respect to the particular incident charged was not sufficient to prove guilt.

36

This is implicit in the majority's assertion that the dissenters, by their interpretation of the prior acts rule, are responsible for allowing child molesters to go unpunished. Hence, the majority acknowledges that, without the admission of evidence of prior uncorroborated events, guilt could not be proved in the offense charged.

Common sense impels the conclusion that these remote uncorroborated events ought not be used to prove a criminal charge brought years later. Because the rules of evidence are rules of common sense formalized to a degree that they can be used in the determination of facts in a legal proceeding and because the rules of evidence compel an analysis and result which is the antithesis of the majority opinion, I dissent.[1]

I disagree with the majority's conclusion that the prior acts testimony of M.A. and J.H., regarding acts which allegedly occurred five and seven years before the charged offense, was admissible. Because the prior acts testimony was more prejudicial than probative, the testimony was improperly admitted. Admission of this tes-

---

[1] Moreover, the tenor of the majority opinion is that, without the use of evidence of other acts such as those introduced here, it would be impossible or substantially more difficult in general to apprehend child molesters. This assumes that the police routinely bring charges on the basis of insufficient evidence in respect to the offense charged. The writer of this dissent, who was a prosecutor at the city, state, and federal levels, believes this to be untrue. Certainly, no evidence supports the majority's implied slur on the professional qualities of our law enforcement officers. In addition, there is not even an unsupported assertion that the proper use of the 'prior acts' rule of evidence permits guilty molesters to escape. The essence of the majority opinion is that parties charged are obviously guilty— hence, how can it be error to admit even unproved, unreliable, uncorroborated testimony of other occurrences that might indicate the defendant is a bad person.

timony was not harmless error, and therefore a new trial should be granted. *See, State v. Dyess*, 124 Wis. 2d 525, 540–48, 370 N.W.2d 222 (1985).

The majority holds that the trial court's decision to admit the evidence was in keeping with the "greater latitude of proof" as to other like occurrences that is permitted in Wisconsin in sex crimes cases, particularly those involving incest or minors. The "greater latitude" concept can be traced through *State v. Fishnick*, 127 Wis. 2d 247, 256, 378 N.W.2d 272 (1985), *Sanford v. State*, 76 Wis. 2d 72, 80, 250 N.W.2d 348 (1977), *State v. Tarrell*, 74 Wis. 2d 647, 658, 247 N.W.2d 696 (1976), *Hendrickson v. State*, 61 Wis. 2d 275, 277, 212 N.W.2d 481 (1973), and to *Proper v. State*, 85 Wis. 615, 630, 55 N.W. 1035 (1893). The concept, as first articulated in *Proper*, was very limited in scope. In none of the subsequent cases, however, does the court ever articulate or explain any rationale for setting sex crimes, either generally or involving minors or blood relatives in particular, apart from all other crimes. No reasons are ever given why evidence not otherwise admissible under the rules of evidence should be allowed in a sex crimes case. No reasons are given because there are no reasons that withstand scrutiny. In every case, the "greater latitude" concept is merely stated as a conclusion fitting the predilection of the court.

The majority also makes the mistake of holding that other crimes testimony was admissible in Friedrich's trial to prove motive, scheme, or plan. The motive, scheme, or plan asserted by the state—to obtain sexual gratification from young females with whom Friedrich had a quasi-familial relationship—is not a motive, scheme, or plan at all. This scheme or plan is simply an assertion that Friedrich had a propensity to

commit sexual assaults. The majority allows the state to relabel a "propensity" as a "scheme or plan" and to thus introduce the forbidden propensity or bad character issue. In doing so, the majority fails to recognize that the terms, "scheme" and "plan," are terms of art with specific definitions.

Evidence of other crimes may be admissible "to prove the existence of a *larger* plan, scheme, or conspiracy *of which the crime on trial is a part.* McCormick, *Evidence*, sec. 190, p. 559 (3d ed. 1984) (emphasis supplied). The terms, "scheme" and "plan," refer to a defendant's formula for achieving a particular purpose. Where there is a scheme or plan, the various acts committed are not committed for their sake alone, but are directed toward achievement of some ultimate or independent purpose. Clearly, the prior acts in this case do not fit that concept. Neither under the rationale of "greater latitude," nor under the proper application of the exceptions to sec. 904.04(2), Stats., is the testimony of M.A. or J.H. admissible. A combination of those rationales is inappropriate and does not allow the admission of the testimony.

Having in general summarized the position of the majority and the position of this dissent let us first consider the genesis of the "greater latitude" exception to the rules of evidence.

*Proper v. State, supra*, indeed used the language, "[a] greater latitude of proof as to other like occurrences is allowed in cases of sexual crimes." P. 360. Unfortunately, with the passage of years, the majority of this court has forgotten the context in which that language was used. The sentence in *Proper* that precedes the one just quoted recites that, "after making proof of one act of adultery by a witness whose evidence was attempted

to be impeached, it was held that other instances of improper familiarity *between the defendant and the same woman not long before* the act of adultery proved, might be given in evidence to corroborate him." (Emphasis supplied.) P. 630. The sentence that immediately follows the "greater latitude" language relied upon by the majority demonstrates the strict limitations on the permissible extent of the "latitude." That subsequent sentence provides:

> "Upon a prosecution for adultery, evidence of previous acts of improper familiarity, amounting to adultery, between the *same persons*, was held competent either in corroboration of witnesses for the prosecution ... " (Emphasis supplied.) P. 630.

Thus, the proposition recited by the majority was intended as a very narrow exception to the common law rules of evidence to permit corroboration of other direct evidence under specific circumstances. In a sense, recent improper sexual relations of the same nature between the same parties may be substantially a part of the same criminal conduct. Such evidence is really admissible, not as evidence of other acts or other crimes, but as being clearly related to, or as a part of, the very crime which is charged. Any doubt that this is the correct analysis of the *Proper* rule, should be removed by *McAllister v. State*, 112 Wis. 496, 88 N.W. 212 (1901). In that case, the facts of *Proper* were re-analyzed. It was pointed out that *Proper* permitted admission of evidence of prior criminal intercourse with the very prosecutrix who had brought the charges in *Proper*. In addition, the evidence in *Proper* showed that "the accused had previously got into bed with the prosecutrix and another girl named Emma, and had sexual intercourse with the other girl"

(p. 499), at the same time making an indecent assault upon the *Proper* prosecutrix.

Justice Winslow in *McAllister* points out that anyone who believed that the reference to the assault on the other girl constituted an imprimatur of the Wisconsin Supreme Court to allow the admission of a previous sexual assault on anyone other than the prosecutrix in the case before the court was to be disabused of that mistaken idea. In explaining the limitations upon the "latitude" rule of *Proper*, Justice Winslow stated:

> "[I]t [the language of *Proper*] expresses the rule which has been generally approved by the authorities, namely, that in prosecutions for crimes of this nature evidence of previous attempts by the accused to commit the crime upon the same person is admissible on the question of intent, but that evidence of attempts to commit the crime upon other persons is not admissible. Mr. Wharton says: 'Evidence of prior sexual assaults on the prosecutrix is admissible on an indictment for rape, though not of rapes on other persons.'" P. 499.[2]

The "greater latitude" language of *Proper* is based upon an evidentiary scenario which is unrelated to the other crimes strictures of sec. 904.04 of the Rules of Evidence. It is clear, or should be, that, under the Wisconsin common law of evidence stated in *Proper*, the introduction into evidence of other sexual crimes that do not involve the person whose case is before the court

---

[2] *McAllister* asserts that the motive or intent impelling a sexual assault is not always the same, that in addition to sexual gratification (rape, so referred to in that case) the motive or intent could be, *e.g.*, "revenge." "[I]t can hardly be logically argued that because a man has assaulted two women, although the assaults were both on the same day, the same motive impelled both assaults." P. 499.

is not to be given "greater latitude" but can only be permitted in evidence if the exceptions set forth in sec. 904.04 are clearly met.

The *Proper* rule remained free of corrupting judicial predilections through *Grabowski v. State*, 126 Wis. 447, 105 N.W. 805 (1905), where evidence of an assault upon a "little girl" a "short time prior to the time in question" (p. 454) was received in a sexual assault case upon the same victim. In *Lanphere v. State*, 114 Wis. 193, 89 N.W. 128 (1902), and *Gundlach v. State*, 184 Wis. 65, 198 N.W. 742 (1924), the Wisconsin court again faithfully and correctly applied the *Proper* rule and allowed the admission of prior sexual misconduct by the accused with the same person who was the victim in the case being prosecuted. *State v. Mitchell*, 253 Wis. 626, 34 N.W.2d 661 (1948), also confined the admission of evidence of a prior sexual assault to an incident with the same person.

In *Hendrickson v. State*, 61 Wis. 2d 275, 212 N.W. 2d 481 (1973), this court again re-emphasized the "greater latitude" rule but narrowly and carefully related it to "unlawful misconduct by defendant in relation to prosecutrix at other times." P. 277. Nevertheless, the unanimous court in *Hendrickson*, ignoring the narrow application of the greater latitude rule in Wisconsin case law that it had just reiterated, went astray when it stated, apparently as a general proposition:

> "A 'greater latitude of proof as to other like occurrences' is clearly evident in Wisconsin cases dealing with sex crimes, particularly those involving incest and indecent liberties with a minor child." P. 279.

The *Hendrickson* court, however, immediately took away what it had just ceded to the "greater latitude"

rule, for it qualified the expanded rule to the point of extinction:

> "This is not so much a matter of relaxing the general rule that it is not competent in a prosecution for one crime to introduce evidence of other offenses as it is a matter of placing testimony concerning other acts or incidents within one of the well established exceptions to such rule, as noted in *Whitty*, and codified in the new Wisconsin Rules of Evidence." (Footnotes omitted.) P. 279.

Thus, *Hendrickson* stands not for a new, sweeping "greater latitude" rule in sex-crime cases, but rather for a re-affirmation of the narrow "same victim–same assailant" exception of *Proper*. In fact, *Hendrickson* actually negatives the broad sweep the majority employs in the instant case by making clear that prior sexual acts with a third person are only admissible under the exceptions of sec. 904.04, Stats. Thus, the question here is not whether the rules of evidence should be flouted, as the majority asserts, because this prosecution is for a sex crime, but whether the proffered evidence is admissible under Rule 904.04(2). No "greater latitude" is permitted in determining whether an exception to the ban on evidence of other crimes, wrongs, or acts is applicable. *Hendrickson*, by its own language, ruled out as inappropriate for its facts the application of the "same victim–same assailant" greater latitude rule of *Proper*.[3]

---

[3] This writer would limit the *Proper* rule to a sex crime both involving the same victim and assailant and so close in time as to be a portion of a continuum of misconduct. Additionally, the ambience of the case should be such that it shows a relationship to the crime charged, *i.e.*, *Proper*, even in its original form, does not conform to reasonable rules of evidence. Mere identity of parties should not be

*Hendrickson* thus went on to an analysis of the exceptions of sec. 904.04 as it could not rely on the "greater latitude" rationale.

*State v. Tarrell*, 74 Wis. 2d 647, 247 N.W.2d 696 (1976), however, completely disregarded the genesis of the "greater latitude" rule and mistakenly asserted its applicability to all sex-crimes cases. The misunderstanding or misconception of the "greater latitude" rule in *Tarrell* was unmasked when it recited that prior sexual conduct completely unrelated to the incident charged and not involving the victim in *Tarrell* was admissible because the evidence "demonstrated a propensity" (p. 658) to engage in immoral conduct with "young girls." Clearly, the court in *Tarrell* was utilizing the prior acts evidence in violation of the sec. 904.04(1) stricture against using prior acts to prove character and to show that the defendant acted "in conformity therewith."[4]

The only crutch that supports the result in *Tarrell* is the erroneous *sub silentio* assertion that, by the use of the "greater latitude" rationale, the rules of evidence may be contorted to the point that they are ignored.

*Sanford v. State*, 76 Wis. 2d 72, 250 N.W.2d 348 (1977), repeated Tarrell's corruption of the "greater latitude" rule. However, *Sanford* did not rest on that proposition. Rather, it found that the prior acts of misconduct were so distinctive as to constitute *modus operandi* evidence that was specifically admissible (*i.e.*, to identify that the defendant, not some other person, had commit-

---

sufficient absent the offering for purposes sanctioned by sec. 904.04(2).

[4] The "propensity" language was withdrawn by this court's opinion in *State v. Fishnick*, 127 Wis. 2d 247, 255, 378 N.W.2d 272 (1985).

ted the crime) as "identity" evidence under the exceptions of sec. 904.04 and *Whitty v. State*, 34 Wis. 2d 278, 149 N.W.2d 557 (1967). While *Sanford* may be correctly faulted for its result and for dicta giving too broad a sweep to the "greater latitude" language, its methodology correctly utilized the exceptions of sec. 904.04(2) and paid lip service to appropriate evidentiary principles.

*Fishnick, supra* at p. 257, reaffirmed the court's "commitment to the principle that a greater latitude of proof is to be allowed in the admission of other-acts evidence in sex crime cases, particularly in those involving incest and indecent liberties with a minor child." The opinion then inexplicably, but nevertheless correctly, states, "Certainly, however, the other-acts evidence must still be placed in one of the sec. 904.04(2) exceptions."[5]

The majority in the instant case does indeed attempt to fit the evidence that was erroneously admitted into the exceptions of sec. 904.04, Stats. When it becomes apparent to the majority that the evidence was a misfit under the sec. 904.04 exceptions, the majority, using a corrupted *Proper* rule, attempts to rationalize the incongruity by asserting that the rules of evidence are not strictly applicable in sex-crimes cases anyhow, because "greater latitude" is permitted. This leap of logic is unwarranted. Under the "greater latitude" rationale of *Proper*, evidence of an incident, not remote in time, and with the *same person* may be admitted. The uncorrupted "greater latitude" rule of *Proper*, in light of our Wisconsin legal history, has nothing to do with any incident involving the defendant and any person not the

---

[5] In *Fishnick*, the state specifically disavowed reliance on the "greater latitude" rule. *Fishnick*, p. 257.

45

victim in the case at bar. In assessing the admissibility of assaults on such other persons, only the rules of evidence, sec. 904.04, pertain. No latitude whatsoever is permitted in their application.

I fail to understand the purpose or the necessity of reaffirming the "greater latitude" theory if admissibility depends upon the applicability of the exceptions permitted by sec. 904.04(2). If the evidence qualifies for one of the sec. 904.04(2) objections, no "greater latitude" is necessary to admit it. The majority in *Fishnick* and the majority in this case must mean that it is acceptable to fudge the facts (*i.e.*, give greater latitude) in sex-crimes cases in order to fit them into one of the exceptions to the "other crimes" rule, but that in all other criminal cases, the presumption of innocence and the rules of evidence are to be given effect. It should be noted that in the instant case, as well as in *Fishnick*, the state does not rely upon the "greater latitude" proposition. It is to be hoped that the state has come to realize that it has gone to the well too often with this canard.[6]

---

[6] The language of the state's brief is:

> "The evidence regarding the earlier incidents with M.A. and J.H. was relevant to show a general plan *as that term is understood in sex crimes cases involving a child victim.* . . . This case is thus one of those warranting the greatest latitude of proof under the *Hendrickson* rule."

Thus, the state recognizes that even the meaning of the word "plan" has been skewed by this court in cases of this kind. Apparently, the state is alternatively asserting that even the exceptions to the other crimes rule are to be construed in such a way as to permit "plan" or "motive" evidence that would be outlawed in all other criminal cases to be admitted in sex-crimes cases.

The careless language used by this court has understandably encouraged this bizarre approach to the rules of evidence.

McCormick, *Evidence,* is cited by the majority for the proposition that the prior acts introduced here are probative of a "plan." I conclude that that assertion can only be based upon a misunderstanding of the McCormick text. It is clear from reading the footnotes to McCormick (see footnote page 559), that a mere prior act, even if a crime, that somewhat fits—or even exactly fits—the category of the crime charged, is not for that reason automatically considered probative of a "plan." McCormick cites as examples of an event admissible under the "plan" exception a previous robbery where it could be shown that the perpetrator obtained the name and address of the victim in the case charged during the course of the first robbery. McCormick, p. 558, n. 11, also cites *United States v. Dothard,* 666 F.2d 498, 502 (11th Cir., 1982), for the proposition:

> " 'Courts have admitted extrinsic act evidence to show a defendant's design or plan to commit the *specific* crime charged, but never to show a design or plan to commit *"crimes of the sort* with which he is charged." ' "

It is clear from a reading of McCormick that something more than propensity—which can, of course, be shown by repeated crimes of the same kind but which showing is specifically forbidden by the "other crimes" rule—is necessary to evidence a plan. There must also be a link between the crime charged and the other acts sought to be introduced into evidence. McCormick stresses that the fact that a defendant has committed the identical offense or the same type of offense in the past does *not* qualify the incident for the "plan" exception to the other crimes prohibition. He cites *State v. Manrique,* 271 Or. 201, 531 P.2d 239, 242-43 (1975), for the proposition that "previous heroin sales [are] not

47

part of [a] common scheme or plan." P. 559. The majority unfortunately misreads McCormick to conclude that repetitious misconduct constitutes a plan. At most, it is probative of propensity, which may not be introduced in evidence. Rule 904.04(1). Other crimes evidence is admissible only to prove an issue in controversy other than propensity.

> "It is well settled that:
> " '... Evidence of other crimes is admissible when it tends to prove a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others *or to establish the identity of the person charged with the commission of the crime on trial,*—in other words where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other.' *Commonwealth v. Wable*, 382 Pa. 80, 82, 114 A.2d 334, 336–37 (1955) (Emphasis added.)" *Commonwealth v. Shively*, 424 A.2d 1257, 1259 (Pa. 1981).

Wigmore stresses that there is a distinction between evidence of a scheme or plan to negative innocent intent (*i.e.*, where defendant admits doing the act charged but defense that an intent or scienter element is missing) and use of the evidence to establish that the defendant actually committed the crime charged. In the latter case, something more is required than the mere doing of other similar acts. 2 Wigmore on *Evidence*, sec. 304, p. 249 (1979). There must be *"such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." Id.* Wigmore explains further:

48

"Thus, where the act of passing counterfeit money is conceded, and the intent alone is in issue, the fact of two previous utterings in the same month might well tend to negative innocent intent; but where the very act of uttering is disputed—as, where the defendant claims that his identity has been mistaken—, and the object is to show that he had a general system or plan of working off a quantity of counterfeit money and did carry it out in this instance, the fact of two previous utterings may be in itself of trifling and inadequate significance. So, on a charge of assault and intent to rape, where the intent alone is disputed, a prior assault on the previous day upon the same woman, or even upon another member of her family, might have probative value; but if the assault itself is disputed, and the defendant attempts, for example, to show an alibi, the same facts might be of little or no value, and it might be necessary to go further and to show (for example) that the defendant on the same day, with a confederate guarding the house, assaulted other women in the same family who escaped, leaving the complainant as the only woman accessible to him for his purpose." *Id.*

In the present case the purpose of the other crimes evidence was solely to establish that the defendant committed the crime charged. As in the *Wigmore* hypothetical, the sexual assault was disputed. There was no plea that there was a "touching," but it was by inadvertence or with innocent intent. Neither intent nor motive are issues in this case. Under no reasonable view of the rules of evidence can prior crimes information be admitted

49

where the only proof is that in a completely unrelated incident the defendant was allegedly culpable.[7]

An excellent explanation of the circumstances under which prior crimes may be admissible is provided by 2 Weinstein & Berger, *Weinstein's Evidence,* sec. 404[16], p. 404–118. They write that courts have used the terms, "scheme" or "plan," in three situations:

1. The other crimes are part of the "*[s]ame or common or connected or inseparable plan or scheme or transaction, or res gestae.*"[8] Evidence of other acts is admitted "[t]o complete the story of the crime on trial by proving its immediate context of happenings near in time and place." Sec. 404[16], p. 404–118.

2. "*Continuing place, scheme or conspiracy.*" Evidence of other acts is admitted " 'to prove the existence of a definite project directed toward completion of the crime in question.' " Sec. 404[16], p. 404–124.

3. "*Unique plan or scheme or pattern.*" Evidence is admitted as showing a plan where "*[t]he device used . . .* [is] so *unusual and distinctive as to be like a signature,*" sec. 404[16], p. 404–128; mere similarity is insufficient. "A defendant cannot be identified as the perpetrator of the charged act simply because he has at other times committed the same commonplace variety of criminal act. . . . " Sec. 404[16], p. 404–129. The plan or scheme must be "sufficiently idiosyncratic." Sec. 404[16], p. 404–130.

It is obvious that the state's "plan" does not meet any of the criteria for schemes and plans outlined by

---

[7] It should be remembered that the evidence of the prior assaults has no greater basis for credibility than the evidence in the case charged. In each case the evidence is without corroboration.

[8] This exception approximates the *Proper* rule in its pristine form.

these authors. The alleged prior acts are neither "necessary to complete the story" of the charged offense by virtue of nearness in time and place, evidence of a "definite project" or ongoing plan, nor sufficiently idiosyncratic to evidence Friedrich's "signature." The evidence of the defendant's alleged prior misconduct would fit almost every sexual assault upon minors that has been before this court. Far from being idiosyncratic, the past conduct here and the charged conduct are unfortunately commonplace. We need only look at the facts of *Proper, supra,* to see that there is nothing new under the judicial sun. Certainly, testimony of these past episodes, even if believed, is not probative except to show that the defendant was a bad man, and therefore must have committed the charged assault. Thus, the "plan" asserted by the state is not a plan at all; it is simply an assertion, couched in different terms in order to meet the exception to the rules, that Friedrich had a propensity to commit the offense charged.

The assertion that sexual gratification provides a "motive" that in some relevant way connects the charged crime to the past events is somewhat naive. In all cases lacking evidence that the defendant's purpose was to physically injure or personally humiliate the victim, or that the touching was accidental, the purpose *ipso facto* under the sexual assault statute is sexual gratification. This is, however, an irrelevant fact in the instant case. Sexual gratification is only an element of the crime where the defense is that of accident—that an "offensive" contact occurred, but was inadvertent. Here, that fact has no relevancy, as the defense is that no contact took place.

The fact that sexual assaults within familial settings are not unusual demonstrates the danger of

prejudging a defendant who is charged with sexual abuse of a child.[9] There is little that is different or distinctive about these assaults. There is no identifiable or distinctive pug mark of the beast. Because most sexual assaults are very similar, the odds are that the admission of prior acts will be prejudicial, and will greatly enhance the likelihood of convicting a defendant, not because he is guilty of the crime charged, but because of proof of a prior crime. This result is not merely regrettable, it is violative of the defendant's right to a due process trial.

> "A defendant cannot be identified as the perpetrator of the charged act simply because he has at other times committed the same commonplace variety of criminal act except by reference to the forbidden inference of propensity." 2 Weinstein & Berger, *Weinstein's Evidence*, sec. 404[16], p. 404-129.

As the Pennsylvania Superior Court stated when repudiating its "greater latitude" rule in sex crimes:

> " 'One of our most fundamental and prized principles in the administration of criminal law is that a distinct crime, except under certain special circumstances, cannot be given in evidence against a defendant who is being tried for another crime.' " *Commonwealth of Pa. v. Boulden*, 116 A.2d 867, 876, 179 Pa. Super. 328 (1955).

This language was expressly adopted by the Pennsylvania Supreme Court in *Commonwealth v. Shively*, 424 A.2d 1257 (Pa. 1981), wherein the court stated:

> "[W]e explicitly overrule [the greater latitude exception in respect to sex crimes] . . . and hold that sexual and nonsexual crimes must be treated alike in

---

[9] The alleged victim was fourteen years old.

deciding whether evidence of prior criminal activity should be admitted." Pp. 1259–1260.

Finally, the motive exception is not available to the state in this case. McCormick states that "[t]he evidence of motive may be probative of the *identity* of the criminal or of malice or *specific intent.*" McCormick, *Evidence,* sec. 190, p. 562 (3d ed. 1984) (emphasis supplied). In the present case, neither identity nor specific intent is an issue. Intent would only be an issue if Friedrich had admitted touching the victim but claimed it was an accident. Thus, prior acts could negative a defense of innocent intent. *See* Wigmore, *supra,* p. 15. Identity is not an issue because the victim specifically accused Friedrich; it is not claimed that, if Friedrich had not assaulted her, someone else did. If identity were an issue, motive could be introduced to show that one person, as opposed to another, committed the offense. Thus, evidence of motive has no role in Friedrich's trial; it is both unhelpful and inadmissible. "Motive" should not be confused with "motivation." *See State v. Tarrell,* 74 Wis. 2d 647, 663 (1976) (dissenting opinion).

The attempted application of exceptions to the prohibition on introduction of evidence of the defendant's bad character in this case is inappropriate. In effect, the state seeks to have the jury convict Friedrich for this offense in part because he allegedly committed other offenses with which he has not been charged. The technique used by the state strips the defendant of his due process right to have notice of the charges against him and of the presumption that he is innocent until proved guilty.

The evidence admitted was highly prejudicial.

Interestingly enough, both the state and the majority have failed to assert that, under the original and

correct formulation of the "greater latitude" theory of *Proper*, the prior alleged assault upon M.A., were it not remote, would be admissible because it involved the same assailant and the same victim.[10] However, as pointed out above, evidence of such a prior event is to be admissible primarily as showing continuing misconduct that approximates a *res gestae* concept, *i.e.*, it is a part of the same crime. As *Proper* and its immediate progeny illustrate, such prior events not only must involve the same assailant and victim, but also must be near in time to the event charged and, of course, must be reliably and unmistakably proved to have occurred.[11] Here, the alleged assault upon M.A. occurred almost five years before trial and its occurrence is supported by no more credible an assertion than that which supports proof of the charged crime—the uncorroborated testimony of the alleged victim.

The prior acts testimony admitted at Friedrich's trial illustrates the low probative value and highly prejudicial nature of most "other acts" evidence. As pointed out, the prior acts do not fit the exceptions of sec. 904.04, Stats. Moreover, the testimony of M.A. and J.H. was admitted despite two additional and serious defects: remoteness in time and unreliability. Even those cases which accept the corrupted "greater latitude" concept have allowed other acts testimony in sex crimes cases only where the act testified to was proved to have occurred recently or if after some lapse of time was indisputably proved to have occurred. *See*, for example, cases cited on p. 22 and 23 of this opinion. I know of no

---

[10] The evidence of the previous alleged assault upon J.H. would not—even if not remote—be admitted under *Proper*.

[11] See footnote 2 re applicability of *Proper* under rules of evidence.

case in which this court has allowed testimony of prior acts on the basis of the exceptions of sec. 904.04 that were both remote in time and essentially unreported or uncorroborated.

This court has, however, allowed admission of evidence of other acts that were remote in time when the evidence was undisputably and of record reliable. *See, State v. Tarrell*, 74 Wis. 2d 647, 247 N.W.2d 696 (1976), where a six-year-old conviction was admitted as evidence of a scheme. If the prior act results in a conviction or a charge, or perhaps even an arrest, a degree of reliability attaches to the testimony thereof.[12] Where, as here, the prior acts not only did not result in an arrest, charge, or conviction, but were never reported to authorities and were uncorroborated, no reliability factor exists to outweigh the problem of remoteness in time.[13]

---

[12] While in retrospect it seems clear that the result in *Tarrell* was in error, the reliability of the prior event was unquestionable, *i.e.*, it was reduced to judgment.

[13] "[E]ven if evidence of prior criminal activity is admissible under [citing cases], said evidence will be rendered inadmissible if it is too remote. [Citing cases] Remoteness, in our view, is but another factor to be considered in determining if the prior crime tends to show that the same person committed both crimes. The degree of similarity between the two incidents necessary to prove common identity of the perpetrator is thus inversely proportional to the time span between the two crimes. Even if the time span instantly is only seven months, we fail to perceive enough similarity between the two episodes to allow admission of the prior activity." *Commonwealth v. Shively*, 424 A.2d 1257, 1259 (Pa. 1981).

While the writer of this dissent would not assert the strict mathematical correlation asserted, it is clear that staleness diminishes probativeness.

Testimony of prior acts that did not result in arrest, charge, or conviction has been admitted in sex crimes cases only where the prior acts were not remote in time. *See, Day v. State*, 92 Wis. 2d 392, 284 N.W.2d 666 (1979), where evidence of prior acts that had occurred within a year of the charged offense was admitted; *see also, Whitty v. State*, 34 Wis. 2d 278, 149 N.W.2d 557 (1967), where evidence of a prior act occurring one or two days before the charged offense was admitted. In the present case, however, the prior acts took place five and seven years before the charged offense. Because the prior acts testimony is supported by neither the factor of temporal propinquity nor reliability, it should not have been admitted, even within an exception to the production of evidence of prior crimes. The testimony was highly prejudicial and of a very low degree of probativeness.

In summary, the "greater latitude" rule as applied by the majority is without jurisprudential or moral justification. It is a device that permits judges to circumvent the law by making it highly probable that defendants will be found guilty, not on the basis of the facts proved in the prosecution of the crime charged, but because they have allegedly been involved in sexual misconduct in the past. The rule is unworthy of a jurisdiction which seeks to do justice. It should be repudiated in toto. The only permissible avenue for the introduction of prior crimes evidence is that outlined in the exceptions to sec. 904.04, Stats. When that rule is understood and applied correctly, the likelihood of convicting a defendant for previous acts not charged in the instant proceedings will be materially lessened.

For the reasons set forth above and on the basis of the rationale stated in *State v. Sonnenberg*, 117 Wis. 2d

159, 344 N.W.2d 95 (1984), and in the dissenting opinion to *State v. Tarrell*, 74 Wis. 2d 647, 661–67, 247 N.W.2d 696 (1976), I dissent.

I am authorized to state that JUSTICES SHIRLEY S. ABRAHAMSON and WILLIAM A. BABLITCH join in this dissent.