COURT OF APPEALS
DECISION
DATED AND FILED

July 11, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP1743-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2018CF353

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

RODNEY WILLIAM DIONNE,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for St. Croix County: SCOTT R. NEEDHAM, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Rodney Dionne appeals a judgment convicting him of one count of first-degree sexual assault of a child under twelve years old.

Dionne argues that the circuit court erroneously denied his motion to admit evidence of specific instances in which the victim allegedly lied about other individuals. In support, Dionne contends that these specific instances were not other-acts evidence, but, even if they were, the court applied an incorrect legal standard and reached an unreasonable conclusion in deciding to exclude the evidence.[1] We reject Dionne's arguments and affirm.

## BACKGROUND

¶2 In June 2018, the State charged Dionne with first-degree sexual assault of a child after then-eight-year-old Amy[2] reported that she had been sexually assaulted by Dionne when she was four or five years old and attending daycare at Dionne's mother's home. Amy has suffered from hearing loss since birth, and she uses hearing aids and has a sign language interpreter at school. Even with the additional assistance, Amy's speech is delayed. Amy first disclosed the assaults to her mother, stating that Dionne pulled her into the bathroom multiple times, would stroke his penis, and would put his penis into her buttocks and vagina. Amy also stated that a "white slimy booger" came out of Dionne's penis. Amy later repeated her account of the assaults in an interview with law enforcement.

---

[1] At times, Dionne intimates that his trial counsel might have provided ineffective assistance. He does not, however, develop an ineffective assistance of counsel claim; therefore, we do not address Dionne's comments in that regard. *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not address an argument that is undeveloped and unsupported by legal authority).

[2] Pursuant to the policies underlying WIS. STAT. RULE 809.86(4) (2021-22), we use a pseudonym instead of the victim's name. All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶3      Before trial, the State disclosed two instances in which Amy might have made false allegations about other individuals. In the first incident, which occurred nearly two months after Amy reported the sexual assaults at issue here, Amy reported to her interpreter that "sometimes her mom and dad hit her on the head" and threaten to confiscate her hearing aids if she tells anyone. Child Protective Services investigated this report and dismissed it, concluding there was "[n]o [t]hreatened [h]arm or [m]altreatment." Roughly one year later, a second incident occurred in which Amy told her interpreter that a classmate had confronted her and said that Dionne was going to "come to school and shoot [Amy] in five days."[3] Law enforcement apparently investigated this report and could not substantiate it.

¶4      In a letter to the circuit court, Dionne expressed his intent to "address" Amy's two reports at trial. Dionne explained at a later hearing that Amy's reports would not be used at trial "to show that she lied in one instance and is likely to have lied in this incident." Rather, as it relates to the classmate allegation, that report would be used to show that Amy "has a problem identifying people" "because if she can't identify a kid she goes to school with and rides the bus with and has recess with, then it's possible she can't identify … Dionne either." Dionne further argued that, under the first step of the **Sullivan**[4] analysis, the report would fall under WIS. STAT. § 904.04(2)(a)'s "identity" purpose. Regarding the parental abuse allegation, counsel stated that the allegation would be used to show "motive or self-preservation" because if "[s]he doesn't do what

_____

[3] The factual circumstances regarding this report are somewhat unclear. We therefore assume that Dionne accurately represented the facts in his motion in limine.

[4] **State v. Sullivan**, 216 Wis. 2d 768, 576 N.W.2d 30 (1998).

her parents want, they hit her." Ultimately, the court rejected Dionne's request to introduce the reports, concluding they were not offered for an acceptable purpose, were not relevant, and the probative value would be substantially outweighed by the danger of unfair prejudice.

¶5 The case subsequently proceeded to a three-day jury trial. After the first day, and during the State's case-in-chief, Dionne filed a motion in limine seeking to introduce evidence about the classmate allegation. Dionne did not, however, seek to introduce evidence of the parental abuse allegation.[5] In support of the motion, Dionne argued that this evidence would show that Amy had a "common plan or scheme" to make "outrageous statements" "to get attention from adults, such as her mother and elementary school staff." Attempting to show some similarities in Amy's reports, Dionne noted that both Amy's allegations of sexual assault and the classmate allegation involved the number five and "getting shot." Specifically, Amy apparently told her mother when first disclosing the sexual assaults that Dionne had sexually assaulted her for "5 minutes or 5 hours" and that the defendant penetrated her buttocks "5 times." In that same conversation, Amy apparently also stated, "Yeah, someone shot me (inaudible)."

¶6 The circuit court denied Dionne's motion. In doing so, the court described three categories of "plan" evidence under Wisconsin law and concluded that the classmate allegation did not fall within any of them. In particular, the court concluded that the classmate allegation was not part of: (1) a "common or

---

[5] Dionne suggests that this motion is "best described as a motion to reconsider the court's ruling on the false allegations." We disagree. Dionne's motion in limine asserted an entirely new theory of admissibility for the classmate allegation and did not seek admissibility of the parental abuse allegation.

connected or inseparable plan or transaction" used "to provide the immediate context of [an] event near in time and place"; (2) "a continuing pla[n], scheme, or conspiracy … directed toward the completion of … the event in question"; or (3) "a unique plan or pattern of activity so unusual and distinctive as to be like a signature." The court also noted that Amy's comment to her mother about being shot was "in the context of when police [should be] called."

¶7      Shortly thereafter, the State presented the rest of its witnesses, calling Amy, Amy's mother, and a sensitive crimes investigator to testify. After the State rested, Dionne's mother testified in support of Dionne's defense. Dionne chose not to testify. The jury subsequently found Dionne guilty of the charged crime. The circuit court later sentenced Dionne to twenty-seven years' initial confinement followed by ten years' extended supervision.

¶8      Dionne now appeals. Additional facts will be provided as necessary below.

## DISCUSSION

¶9      We review a circuit court's decision to exclude evidence for an erroneous exercise of discretion. *State v. Nieves*, 2017 WI 69, ¶16, 376 Wis. 2d 300, 897 N.W.2d 363. Thus, we will uphold a court's evidentiary ruling "if it 'examined the relevant facts, applied a proper standard of law, used a demonstrated rational process and reached a conclusion that a reasonable judge could reach.'" *State v. Hurley*, 2015 WI 35, ¶28, 361 Wis. 2d 529, 861 N.W.2d 174 (citation omitted). "Whether a court applied the correct legal standard in exercising its discretion is a question of law which we review de novo." *American Fam. Mut. Ins. Co. v. Golke*, 2009 WI 81, ¶18, 319 Wis. 2d 397, 768 N.W.2d 729. Furthermore, when a circuit court fails to set forth its reasoning, we

independently review the record to determine whether it provides a basis for the court's exercise of discretion. *State v. Sullivan*, 216 Wis. 2d 768, 781, 576 N.W.2d 30 (1998).

¶10 Generally, "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." WIS. STAT. § 904.04(2)(a). Section 904.04(2)(a), however, does not prohibit the introduction of other-acts evidence "when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* The general prohibition against the admission of other-acts evidence "is not limited solely to a defendant's acts." *State v. Kimpel*, 153 Wis. 2d 697, 704, 451 N.W.2d 790 (Ct. App. 1989).

¶11 Furthermore, specific instances of a witness's conduct—other than a criminal conviction or a delinquency adjudication as provided in WIS. STAT. § 906.09—may not be proved by extrinsic evidence for the purpose of attacking or supporting the witness's character for truthfulness. WIS. STAT. § 906.08(2). However, subject to WIS. STAT. § 972.11(2), and if probative of truthfulness or untruthfulness and not remote in time, such instances may "be inquired into on cross-examination of the witness or on cross-examination of a witness who testifies to his or her character for truthfulness or untruthfulness."[6] Sec. 906.08(2).

¶12 Dionne argues that the circuit court erred, as a matter of law, by characterizing the evidence of Amy's allegedly false allegations as other-acts

---

[6] Dionne did not argue in the circuit court—nor does he argue on appeal—that the court's exclusion of evidence violated WIS. STAT. § 906.08(2).

evidence. The crux of Dionne's argument is that WIS. STAT. § 904.04(2)(a) applies only to the *defendant's* other acts; it does not apply to a victim's or another witness's other acts. Dionne acknowledges our conclusion in *Kimpel* that other-acts evidence is not limited to only a defendant's acts, but he nonetheless argues that the reasoning in *Kimpel* was flawed. He further argues that the conclusion in *Kimpel* "cannot survive the language subsequently found in *Sullivan*."

¶13 Dionne's argument is a nonstarter.[7] This court has already determined that the general prohibition against the admission of other-acts evidence "is not limited solely to a defendant's acts." *Kimpel*, 153 Wis. 2d at 704. Whatever the merit of *Kimpel*'s reasoning,[8] we cannot "overrule, modify or withdraw language from a previously published decision of the court of appeals," such as *Kimpel*. *See Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997). Our supreme court is the only state court with the power to do so, *id.* at 189, a holding we are likewise bound to follow despite Dionne's criticism of *Cook*.

---

[7] The State argues that judicial estoppel applies to Dionne's argument because he himself characterized the proffered evidence as other-acts evidence in the circuit court. We assume, without deciding, that judicial estoppel does not apply to Dionne's argument because we ultimately conclude that Dionne's argument fails on the merits.

[8] Dionne criticizes the *Kimpel* court for recognizing that the plain language of WIS. STAT. § 904.04 uses the terms "accused," "victim," and "witness" when discussing character evidence but later uses the general term "person" when discussing other-acts evidence. *See State v. Kimpel*, 153 Wis. 2d 697, 704, 451 N.W.2d 790 (Ct. App. 1989). This criticism is without any basis. It is well-established that Wisconsin courts cannot "disregard the plain, clear words of the statute." *See State v. Grandberry*, 2018 WI 29, ¶11, 380 Wis. 2d 541, 910 N.W.2d 214 (citation omitted). Dionne also fails to cite any legal authority for his suggestion that the codification of the Wisconsin Rules of Evidence did not change the common law in any way.

¶14 Furthermore, our supreme court's discussion in *Sullivan* did not overrule or contradict *Kimpel*. Although the *Sullivan* court referenced the "accused" when discussing WIS. STAT. § 904.04(2), the issue before the court involved the admissibility of only the *defendant's* other acts. *Sullivan*, 216 Wis. 2d at 782-84. In other words, the court did not address whether § 904.04(2) could also apply to a victim's or a witness's other acts. The court also affirmed that the admissibility of other-acts evidence "is governed by" § 904.04(2). *Sullivan*, 216 Wis. 2d at 781. In short, we are bound by *Kimpel*.[9] *See Cook*, 208 Wis. 2d at 190.

¶15 In the alternative, Dionne argues that the circuit court erroneously exercised its discretion by applying an incorrect legal standard to determine whether Amy's allegedly false allegations constituted evidence of a "plan." Dionne concedes that the court "understood and applied the three[-]part *Sullivan* test," but he argues that the court's legal definition of "plan" is "incomprehensible, unsupported, and contradicted by the court's own citation." Dionne asserts that the correct definition of a plan is provided in *State v. Balistreri*, 106 Wis. 2d 741, 317 N.W.2d 493 (1982), which states:

> The word "plan" in [WIS. STAT. §] 904.04(2) means a design or scheme formed to accomplish some particular purpose.… Evidence showing a plan establishes a definite prior design, plan, or scheme which includes the doing of the act charged…. [T]here must be "such a concurrence of common features that the various acts are materially to be explained as caused by a general plan of which they are the individual manifestations."

---

[9] Dionne cites a number of other cases in support of his argument. All of those cases are inapt, however, because they either predate the codification of the Wisconsin Rules of Evidence or do not address the precise issue of whether WIS. STAT. § 904.04(2) applies to other acts committed by someone other than a defendant.

*See* **Balistreri**, 106 Wis. 2d at 756-57 (second alteration in original; citation omitted).

¶16 Dionne's argument fails. In denying Dionne's request to admit evidence of the classmate allegation, the circuit court noted that there are at least three general circumstances in which "scheme" or "plan" evidence might be admissible:

> [W]hen I looked at the notes that I have for purposes of other[-]acts evidence when the reference is made to plan or scheme, there's generally three types that establish a plan. [First, the other acts are] part of the common or connected or inseparable plan or transaction, evidence necessary to provide the immediate context of event near in time and place. It's not being offered for that purpose. Second, a definite continuing pla[n], scheme, or conspiracy. A project directed toward the completion of the crime in question or the event in question. It's not part of that.
>
> Third, a unique plan or pattern of activity so unusual and distinctive as to be like a signature. Mere similarity is not enough. Sufficiently idiosyncratic to constitute a distinctive signature is what is required, and separate incidents not related to steps in a plan are inadmissible as a plan, pursuant to [**Balistreri**].

¶17 The State argues—and we agree—that the circuit court's comments emanate from Wisconsin case law. The court reasonably relied on **Balistreri** for the proposition that "separate incidents not related to steps in a plan are inadmissible as a plan." *See id.* at 757 (concluding that evidence of an earlier shooting was inadmissible because none of the evidence "indicate[d] that the earlier shooting was a step in a plan leading to the shooting" at issue). In addition, the court's initial comments mirror a discussion in **State v. Friedrich**, 135 Wis. 2d 1, 398 N.W.2d 763 (1987), which noted three circumstances that might establish a "plan" or "scheme." *Id.* at 50 (Heffernan, C.J., dissenting). Although that discussion occurred in the context of a dissent and is not binding authority, Dionne

offers no explanation for why that discussion—which, in turn, heavily quoted a treatise—is an erroneous summary of Wisconsin law.[10] To the contrary, the dissenting justice's discussion appears to capture the same principles discussed in *Balistreri* but categorizes them into different kinds of "plan" evidence. Accordingly, we are not convinced that the court applied an incorrect legal standard in this case.

¶18 Dionne last argues that the circuit court reached unreasonable conclusions in deciding to exclude evidence of Amy's allegedly false allegations. He contends that those allegations were offered for the proper purpose of proving a plan and would show that Amy used "[f]alse allegations of mistreatment" to "[g]ain adults' attention." Dionne further argues that the evidence was relevant to proving his theory that Amy fabricated her allegations of sexual assault and that the probative value of the allegations is not substantially outweighed by any unfair prejudice.

¶19 As an initial matter, Dionne has forfeited any argument that the circuit court erroneously excluded Amy's parental abuse allegation on the basis that the evidence established a plan. "Arguments raised for the first time on appeal are generally deemed forfeited …." *State Farm Mut. Auto. Ins. Co. v. Hunt*, 2014 WI App 115, ¶32, 358 Wis. 2d 379, 856 N.W.2d 633. Dionne initially sought to introduce the parental abuse allegation to show "motive or self-preservation" because if "[Amy] doesn't do what her parents want, they hit

---

[10] The three categories of "plan" evidence discussed in *State v. Friedrich*, 135 Wis. 2d 1, 50, 398 N.W.2d 763 (1987) (Heffernan, C.J., dissenting), are still recognized in JACK B. WEINSTEIN & MARGARET A. BERGER, 1 WEINSTEIN'S EVIDENCE MANUAL § 7.01[5][d][v] (2023).

her." When Dionne later argued that the classmate allegation would be used to show a plan, Dionne never revised his argument regarding the parental abuse allegation. Thus, Dionne never argued in the circuit court, as he does now on appeal, that Amy's allegation of parental abuse was evidence of a plan. Dionne has also abandoned his argument that the parental abuse allegation showed Amy's motive to lie. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the [circuit] court, but not raised on appeal, is deemed abandoned."). Accordingly, we will consider only whether the court erroneously excluded the classmate allegation because Dionne has forfeited his argument regarding the parental abuse allegation on appeal. *See Hunt*, 358 Wis. 2d 379, ¶32.

¶20 Courts employ a three-step analysis to determine whether other-acts evidence is admissible under WIS. STAT. § 904.04(2)(a). *State v. Marinez*, 2011 WI 12, ¶19, 331 Wis. 2d 568, 797 N.W.2d 399. Specifically, other-acts evidence is admissible if: (1) it is offered for a permissible purpose, other than the prohibited propensity purpose, pursuant to § 904.04(2)(a); (2) it is relevant under WIS. STAT. § 904.01; and (3) its probative value is not substantially outweighed by the danger of unfair prejudice under WIS. STAT. § 904.03. *Marinez*, 331 Wis. 2d 568, ¶19.

¶21 Dionne's argument fails under the first step of this analysis. A reasonable judge could determine that the classmate allegation was not "a step in a plan leading to the [sexual assault allegations], or some other result of which the [sexual assault allegations were] but one step." *See State v. Cofield*, 2000 WI App 196, ¶13, 238 Wis. 2d 467, 618 N.W.2d 214. As an initial matter, the classmate allegation occurred after the initial sexual assault allegations; therefore, the classmate allegation was not a "step" leading to the sexual assault allegations. In

11

addition, a reasonable judge could determine that the allegations were not steps in an attempt to obtain "some other result" because the classmate allegation occurred over one year after the sexual assault allegations and in a materially different setting.

¶22 A reasonable judge could also conclude that the allegations lacked "a concurrence of common features." *See **Balistreri***, 106 Wis. 2d at 756-57 (citation omitted). Amy first reported the sexual assaults to her mother when she was at home, three to four years after the assaults occurred. In recalling those assaults, Amy provided details that were arguably beyond the knowledge or imagination of an average eight-year-old girl (e.g., describing a "white slimy booger" coming from Dionne's penis). The allegations also described physical actions done to her by an adult that she could perceive both visually and through her sense of touch. In contrast, Amy made the classmate allegation to her interpreter at school. The allegation involved a verbal statement by another student, which could have been misunderstood due to Amy's hearing impairments, and its subject matter was not complex or beyond the knowledge and imagination of a young child.

¶23 Dionne suggests that there were "commonalities" between the allegations because Amy used the number five in both allegations and she made allegations about people caring for her. This argument is misplaced. The classmate allegation did not involve an adult who was caring for Amy; it involved another child around Amy's age. Furthermore, Amy's sexual assault allegations also included numbers other than five, such as Amy stating that Dionne put his penis in her vagina "2 times"; that the assaults occurred "3 or 4" years before her initial report; and that the assaults occurred "20 (inaudible) or 40" times. A

reasonable judge could therefore reject the suggestion that Amy's use of the number five indicated some connection between the two sets of allegations.

¶24 In short, a reasonable judge could conclude that Dionne did not offer evidence of Amy's classmate allegation to show a definite prior design, plan, or scheme of false reporting but, rather, for the impermissible purpose of suggesting that Amy has a character for untruthfulness and acted in conformity with that character when previously reporting the sexual assaults. Accordingly, the court did not erroneously exercise its discretion by excluding this evidence.[11]

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[11] The State argues that even if the circuit court erred by excluding Dionne's proffered evidence, the court's error was harmless. We need not address this issue, however, because we conclude that the court did not erroneously exclude Dionne's proffered evidence. *See **Turner v. Taylor**,* 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (we need not address all issues raised by the parties if one is dispositive).